**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Archie L. WAINWRIGHT, Defendant-**
**Appellant.**

**No. 88–68.**

United States Court of Appeals
Tenth Circuit.

June 30, 1969.

Rehearing Denied Aug. 14, 1969.

---

See also, D.C., 284 F.Supp. 129.

Joseph M. Howard, Dept. of Justice (Lawrence M. Henry, U. S. Atty., Rich-ard M. Roberts, Acting Asst. Atty. Gen., and Richard B. Buhrman, Dept. of Justice, with him on the brief) for plaintiff-appellee.

Robert D. Inman and Melvin A. Coffee, Inman, Flynn & Coffee, Denver, Colo., for defendant-appellant.

Before MURRAH, Chief Judge, PHILLIPS, Senior Circuit Judge, and SETH, Circuit Judge.

MURRAH, Chief Judge.

The appellant, Archie R. Wainwright, was indicted on four counts for willfully attempting to evade federal income taxes for the years 1960, 1961, 1962, and 1963 in violation of Section 7201 of Title 26 United States Code.[1] On motion for acquittal on all counts, the trial judge struck the count relating to 1960. He was convicted by a jury on the remaining counts and appeals from the sentencing judgment, alleging numerous errors which we shall consider as developed by the facts.

During the period involved, Wainwright and his wife operated the Park Oil Company as individual proprietors. This company owned and operated several gasoline service stations. Each station was run by a manager who received a commission on gasoline sales. Wainwright had several large gasoline suppliers. He paid the full purchase price of the gasoline monthly and received back from the supplier a discount or rebate check. The amount of this purchase discount depended on the individual supplier and the volume of gasoline purchases.

When the Internal Revenue Service agent checked the taxpayer's books he found that the gross income per the return exceeded the gross income per the accounting records. Wainwright explained this discrepancy to the agent by producing a "black book" he had not earlier

---

1. § 7201 reads: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the cost of prosecution."

shown the agent. This record contained lists of purchase discount checks for the years in question, and for each year corresponded to the difference noted in gross income. Except for minor adjustments, all other items on the returns corresponded with the accounting records. But when the agent checked the purchase discounts with Wainwright's suppliers discrepancies developed. The crux of the government's case, therefore, was that Wainwright willfully understated his purchase discounts with consequent understatement of taxable income for each of the prosecution years.

This method of proof is attacked for failure to prove the "corpus delecti" of the crime, i.e. overstatement of the amount of gasoline purchased with consequent understatement in taxable income. The specific error urged in this regard is that since purchase discounts are properly deductions from merchandise expense rather than additions to gross income, the burden was on the government to prove the correct amount of the gasoline purchases. Admittedly, the government made no attempt to verify purchases from suppliers other than on a spot check basis since this item agreed with Wainwright's books and the I.R.S. apparently had no reason to question its correctness. The government refers us to that line of cases holding that the I.R.S. has no burden to show that an accused tax evader had no offsetting expenses. See United States v. Bender, 218 F.2d 869 (7th Cir. 1955) cert. den. 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955); United States v. Stayback, 212 F.2d 313 (3rd Cir. 1954) cert. den. 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955); and Dillon v. United States, 218 F.2d 97 (8th Cir. 1955) cert. dismissed 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796 (1955). The taxpayer's response is that since I.R.S. regulations, 26 C.F.R. § 1.471–3(b), and proper accounting practices consider rebates a reduction in an expense item it was thereby incumbent on the government to show the correct expense figure.

We think appellant's argument puts too great an emphasis on accounting factors. By comparing Wainwright's books with his suppliers' records, the I.R.S. agent was able to show that the rebate account, as included in gross income, was substantially less than the figures reflected in the suppliers' records. The government's case was built around proving the true rebate receipts. Having proved this, the factum of a substantially understated return was established. It was not incumbent on the government to defense its own case by negating the existence of additional unreported gasoline purchases. We think the government may safely rely on the statements in the taxpayer's return and determine its correctness by reference to the books and records upon which the return was made and any other data which may affect the integrity of the reported taxable income. The taxpayer's thesis would require the government to prove not only that some figure was incorrect but that all the others were correct—clearly an intolerable burden.

The next allegation of error refers to the exclusion of certain testimony of Wainwright's expert witness, Mr. Marvin Stone. Mr. Stone was called and qualified as an expert witness in the field of accounting but was prevented from answering several questions directed by Wainwright's counsel, the first of which occurred in this way: Mr. Glenn Smith, a special revenue agent for the I.R.S., was called and qualified as an expert witness for the government. He testified that he compared the taxpayer's records against his books for the years in question and found the discrepancies here involved. In relation to the rebate figure, Smith testified that while it should be treated as a reduction in expenses, it made no difference in the taxable income whether reported properly or as an item of gross income. The taxpayer's expert agreed with this conclusion.

On direct examination, Wainwright's counsel asked Mr. Stone: "If an accountant were to indicate that pur-

chase discounts could be reported [either as part of gross income or as part of expenses] would you have any opinion regarding the qualifications of that particular [accountant]". On the government's objection, the trial court rightly prevented counsel from finishing the question and the witness from answering. While it is perfectly proper to impeach an adverse expert witness by contrary testimony of another expert, it is improper to seek an opinion on the very matter which the jury alone must judge, i.e. which expert they wish to believe. Moreover, in reviewing these alleged errors we are guided by the principle that the admission of evidence lies largely in the trial court's discretion and will not be set aside on appeal except for a clear prejudicial abuse of this discretion. Leavitt v. Scott, 338 F.2d 749 (10th Cir. 1964).

■ The taxpayer also attempted to prove that he had unreported expenses which would offset the alleged understatement of income. He testified generally that he had not reported all expenses and specified that dependent deductions relating to his children by a former marriage, entertainment expenses, and parking expenses had not been reported. Outside a few minor examples, however, he was unable to testify as to exact amounts or occasions. He then attempted to have Mr. Stone testify as to what effect the omission of these deductions would have had on his taxable income. The trial judge refused to permit this, saying, "This expert cannot testify to matters of which he does not have knowledge, either that he obtained through some documents or that has been established." We agree with the trial judge that the taxpayer failed to lay a proper foundation for this type of questioning.

The last and most serious challenge to the limitation placed on the examination of the taxpayer's expert concerns the character and sufficiency of Wainwright's accounting records. He offered to prove, by his expert witness, that "The kinds of records which would have been necessary to accurately reflect income for one reason or another were not kept, * * * what types of ledgers, what types of cost control, would have been necessary to accurately reflect and present summary and cost analyses for him so that accurate income figures could have been kept," and "That it was an accounting impossibility for him to accurately keep the records which would enable him * * * to accurately and completely reflect all of his income." On objection by the government, the trial judge excluded this testimony, stating, "I don't think that's a defense."

■ On appeal, Wainwright argues that the lack of accounting records sufficient to properly and accurately reflect his income was evidence for the jury on the issue of willfulness and actually negated any intent on his part to evade the income taxes. The government's answer, without the benefit of any citation of authority, is that the "black book" method of recording rebate checks was sufficiently accurate for tax purposes and, if properly maintained, would have reflected the true amounts of purchase discounts. Thus, they argue, the failure to accurately maintain this record was evidence for the jury of willfulness and evidence as to what he should have done in a general way is irrelevant.

In Haigler v. United States, 172 F.2d 986, 987 (10th Cir. 1949) we noted that whenever willfulness or bad intent is an essential element of the crime, as it is here, "the accused may not only directly testify that he had no such motive or purpose but he may, within rational rights, 'buttress such statement with testimony of relevant circumstances.' Miller v. United States, 120 F.2d 968, 970 (10th Cir. 1941)." See also McDonald v. United States, 246 F.2d 727 (10th Cir. 1957) cert. den. 355 U.S. 863, 78 S.Ct. 95, 2 L.Ed.2d 68 (1957) and Peterson v. United States, 268 F.2d 87 (10th Cir. 1959). And cf. McCarty v. United States, 409 F.2d 793 (10th Cir. 1969). But none of these cases dealt with the issue of whether an accountant may comment on the deficiencies of a taxpayer's

books to show the lack of intent, and no such cases were cited to us.

Our own research has disclosed a paucity of cases, none directly in point. In Fischer v. United States, 212 F.2d 441 (10th Cir. 1954) we held that a booklet on taxation written by an attorney-taxpayer was admissible against him to show willfulness. But the closest case to ours is the Ninth Circuit case of Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965). In this case, the taxpayer sought to prove by an accountant that in maintaining his accounting records the taxpayer had made many mistakes. The taxpayer himself had already testified that these mistakes had been made and the court held that no expert testimony was needed to show the "fact" of the mistakes and that "The accountant's opinion or conclusion that the errors resulted from appellant's carelessness, without intent to evade his income tax, would have been improper as going beyond the scope of his expert competence." [footnotes omitted]. Cf. Bostwick v. United States, 218 F.2d 790 (5th Cir. 1955) and Blumberg v. United States, 222 F.2d 496 (5th Cir. 1955).

In our case, however, the taxpayer did not attempt to elicit an expert opinion on his subjective good faith, but rather that his deficient accounting practices were objective evidence that he did not willfully evade the income taxes. But the gravamen of this alleged offense was the failure to report all purchase discounts. As the court said in Bostwick v. United States, supra, p. 793 of 218 F.2d, "The most adequate method of accounting will not clearly or truly reflect income unless the items of receipt and expenditure are truthfully entered." And here the character of his general accounting system is too remote from his failure to accurately maintain the "black book", to be relevant to the issue of willfulness. Surely if Wainwright had recorded all such rebates in his "black book" no under-

statement would have occurred and whether or not his failure to do so was willful is for the jury to decide in light of all the circumstances.

Appellant next argues that the trial judge unduly limited his cross-examination of the government's expert witness. Specifically, he complains that he was not permitted to probe the revenue agent's familiarity and "understanding of the relationship between the civil and the criminal investigatory arms of the Internal Revenue Service." Apparently the purpose of this attempted probe was to ascertain the witness' credibility as an expert. The trial court expressed a lack of comprehension as to exactly what Wainwright was attempting to attack with his offer of proof and asked Wainwright's counsel specifically what he wanted to ask. After a lengthy list of questions, the court ruled that most of what he wanted to ask would be permitted but that the agent's involvement with the separate potential civil aspect of the case would be excluded.

Neither the record nor appellant's brief give us any hint as to the relevancy of probing the expert's familiarity with the possible civil action to collect back taxes and penalties. Certainly, counsel is permitted broad discretion in cross-examining an expert witness, but the trial court also has broad discretion in the conduct of the trial and we will not upset its evidentiary rulings relating to a witness' credibility without a clear showing of prejudice. See Leavitt v. United States, supra. We can find no error in this regard.

Wainwright also complains of an instruction given by the trial judge.[2] He argues the instruction that if the jury found that he signed the returns they could infer that he had knowledge of the contents of the returns, erroneously shifted the burden to him on the issue of

2. It does not appear in our record whether Wainwright properly objected to the challenged instruction. Rule 30, Fed.R. Crim.P., 18 U.S.C. But since the government does not raise the question, we shall treat the issue as properly preserved.

willfulness.[3] Again the government answers without authority.

All instructions must be read as a whole and exceptions to a part can only be considered as it related to the whole. Haskell v. United States, 241 F.2d 790, 794 (10th Cir. 1957) and Devine v. United States, 403 F.2d 93 (10th Cir. 1968). In viewing the challenged instruction in this light we find nothing more than proper comments made to guide the jury in their deliberations. See Elbel v. United States, 364 F.2d 127, 136 (10th Cir. 1966). Advising a jury they may infer a logical consequence from a demonstrated fact in no way shifts the burden to the accused. The jury was told the taxpayer must have a specific intent to evade the tax, that per 26 U.S.C. § 6064 they could accept the return as being signed by the taxpayer unless evidence showed the contrary, that they could believe from his signing of the return that he knew its contents, but that to convict him they must find "a fraudulent return was filed with a specific intent" to evade taxes lawfully due. We find no error in the instruction given.

Wainwright further complains of the exclusion of evidence that he had taken a polygraph or "lie detector" test, furnished the government with the results and offered to take another administered by a government expert.[4] The primary purpose for this proffer was not as direct proof of his innocence but to reflect his subjective intent—an essential element of the crime charged. Counsel for Wainwright, with admirable candor, admits no federal cases support him and notes specifically a case from this circuit holding contrary to his position. Marks v. United States, 260 F.2d 377 (10th Cir. 1958) cert. den. 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959). Nevertheless, we are strongly urged to reconsider and at least modify the ruling in Marks.

The thrust of Wainwright's argument is that in the 10 years since Marks, the "state of the art" of polygraph testing has improved to the point that the accuracy of such tests equals that of such commonly admissible evidence as results of handwriting tests, psychiatric opinion evidence, and alcohol blood tests. But leaving to one

3. The challenged instruction appeared in context as follows:
 "Now, if a person in good faith believes that he has paid all the taxes that he owes, he cannot be guilty of criminal intent to evade the tax, but if a person acts without reasonable grounds for belief that his conduct is lawful, it is for the jury to decide whether or not he acted in good faith or whether he wilfully intended to evade the tax. This issue of intent as to whether the defendant wilfully attempted to evade or defeat the tax is one which the jury must determine from consideration of all of the evidence in the case bearing upon the defendant's state of mind.
 "Now, the pertinent section of the Internal Revenue Code does provide the fact that an individual's name as signed to a return shall be prima facie evidence for all purposes that the return was actually signed by him, which is to say unless and until out weighed by evidence in the case which leads the jury to a different or contrary conclusion, the presumption is that a filed tax return was in fact signed by the person whose name appears to be signed thereto.

 "Now, wherever the facts appear beyond a reasonable doubt from the evidence in the case that the accused had signed his tax return, a jury may draw the inference and find that the accused had knowledge of the contents of the return.
 "If you find beyond a reasonable doubt from the evidence in the case that a fraudulent return was filed with a specific intent on the part of the defendant here to evade or defeat a substantial portion of the tax lawfully due from him and that this was done wilfully, the offense was complete as soon as the fraudulent return was wilfully filed."

4. Wainwright's proffer to the trial court outside the presence of the jury was:
 "Your Honor, we wish to make two offers of proof. The first one is that the defendant would testify, if allowed, that he took a polygraph test to the Intelligence Division [of the I.R.S.] and that he offered to take another test and have the FBI or federal officials administer said polygraph test."

side the numerous reasons advanced for rejecting polygraph results,[5] the argument has no force in our case.

 Despite the periodical literature cited relating to the reliability of polygraph testing, Wainwright laid no predicate for the admissibility of this evidence. Without doubt, matters of factual proof must keep pace with developing scientific standards. And rules of evidence exist to assist the jury in arriving at factual conclusions. But no judgment can be made without relevant expert testimony relating to the probative value of such evidence. Wainwright totally failed to supply the condition noted by Wigmore that before such evidence be admitted an expert testify "that the proposed test is an accepted one in his profession and that it has a reasonable measure of precision in its indications." 3 Wigmore on Evidence (3rd Ed. 1940) § 990. The trial court properly excluded it even though in a proper case it may be admissible.

The final error urged by Appellant is that evidence was admitted by the trial court which violated his right against self-incrimination preserved by the Fifth Amendment. The government called Mr. John Larrow who had prepared the challenged returns for the years 1961 and 1962. Mr. Larrow testified that he prepared the returns partially from a "schedule C"[6] prepared by Mr. Wainwright. Apparently under subpoena duces tecum, Mr. Larrow had furnished the government with the originals of these schedule C's as penciled in by Mr. Wainwright. These two items were properly identified and introduced into evidence the morning of the first day of trial without objection. Mr. Larrow transferred these penciled figures to the actual return as filed with the result that the filed returns include a schedule C identical with the challenged exhibits. That afternoon, counsel for Wainwright orally moved that the exhibits be stricken on Fifth Amendment grounds. The motion was denied.

 The essence of the argument is that the schedule C's as prepared by Wainwright were compulsively obtained from Larrow by subpoena and Wainwright was thus compelled to give evidence against himself. Without saying so, he seems to invoke the rationale of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) and United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969). See also United States v. Freeman, 412 F.2d 1180 (10th Cir. 1969). Before discussing this argument it should be understood that Wainwright does not claim an accountant-client privilege as to confidential communications. He realizes that such a privilege is not recognized in federal court. Rule 26 Fed.R.Crim.P., 18 U.S.C.; F.T.C. v. St. Regis Paper Co., 304 F.2d 731 (7th Cir. 1962); United States v. Bowman, 358 F.2d 421 (3rd Cir. 1966); United States v. Balistrieri, 403 F.2d 472 (7th Cir. 1968) vacated on other grounds 395 U.S. 710, 89 S.Ct. 2032, 23 L.Ed.2d 654 (1969); and cf. Preliminary Draft of Proposed Rules of Evidence for the United States District Court.

 No in depth discussion of the relevant case law is necessary to dis-

5. See Tyler v. United States, 90 U.S.App. D.C. 2, 193 F.2d 24 (1952) cert. den. 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326 (1952); Sheppard v. Maxwell, 346 F.2d 707 (6th Cir. 1965); Aetna Insurance Co. v. Barnett Brothers, Inc., 289 F.2d 30 (8th Cir. 1961); United States v. Tremont, 351 F.2d 144 (6th Cir. 1965); United States ex rel. Sadowy v. Fay, 189 F.Supp. 150 (D.C.N.Y.1960); United States v. Stromberg, 179 F.Supp. 278 (D.C.N.Y.1960); and United States ex rel. Szocki v. Cavell, 156 F.Supp. 79 (D.C.Pa.1957).

And for numerous state cases dealing with the topic see 3 Wigmore on Evidence (3rd Ed. 1940) § 999 footnote 2, 1964 Supplement.

6. A schedule C is a form for the reporting of income and expenses by an individual in the conduct of a business or profession.

pose of this alleged error. Mr. Larrow testified that Mr. Wainwright had given him the information on the return and that he had supplied this information on a penciled-in schedule C. No error is asserted as to this testimony and none can be found. Thus the alleged self-incrimination must proceed from the prejudicial effect of the jury's actually seeing the penciled-in schedule C's to which the accountant had already testified. But such evidence is merely cumulative of matters already in evidence and could not affect the substantial rights of the accused. The purpose of the testimony was to show that Mr. Wainwright furnished the erroneous information as to trade discounts or rebates. There was no compulsory self-incrimination as in Leary, Covington and their progenitors.

The remaining theories advanced by Appellant have been examined and found to be without merit.

The judgment is affirmed.