**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Patricia Ann LARRY, aka Kim, Defendant-Appellant.**

**No. 74–1687.**

United States Court of Appeals, Tenth Circuit.

Argued July 9, 1975.

Decided Sept. 2, 1975.

Walter Slatkin, Denver, Colo. (Donald Wasko, Denver, Colo., with him on the brief), for defendant-appellant.

Thomas N. Alfrey, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Before Mr. Justice CLARK, * LEWIS, Chief Judge, and McWILLIAMS, Circuit Judge.

LEWIS, Chief Judge.

Defendant was found guilty of distributing narcotics in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. She appeals from the judgment of conviction urging as prejudicial error designated rulings by the trial court restricting the direct examination of an expert witness. The expert was called by her to rebut the trustworthiness of testimony of an expert government witness relating to chemical analysis pertaining to the existence of heroin.

The government presented Josef Prall as an expert who testified that certain material contained heroin. Upon cross-examination Mr. Prall set forth a detailed explanation of the chemical testing procedures utilized. The defendant, later in the trial, presented Dr. Dale Wingeleth, a forensic chemist, who the trial court also accepted as an expert witness. The relevant portion of Dr. Wingeleth's testimony to the issue presented on appeal is as follows:

(To Dr. Wingeleth)

Q. With the data presented in court by Mr. Prall, do you feel that you could have arrived at the same conclusion he did?

Mr. Wiggins: Your Honor, I object to that sort of conclusion.

THE COURT: The objection is sustained.

Q. You overheard the description of the accumulation of data that was offered by Mr. Prall in court, did you not?

A. Yes.

Q. And you heard his conclusion?

A. Yes.

Q. Have you had the opportunity to perform the same tests yourself in your lab analysis?

A. On the substance involved in this case?

Q. No, not in the substance involved in this case. On other substances, looking for the same conclusion, a conclusion that either the substance contained heroin, or did not contain heroin.

A. Yes, I have performed similar tests.

Q. Could you offer your opinion as to whether or not you would have formed a conclusion based on those tests, had you run the tests Mr. Prall ran?

Mr. Wiggins: Objection.

THE COURT: The objection is sustained. This the jury will decide. You can ask this gentleman how he would do it. The jury will decide whether the method done was adequate or inadequate and so forth. This man is not to judge the other chemist. The jury will judge him and the other chemist.

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

Q. Dr. Wingeleth, in performing this same test, how would you have gone about the analysis to have arrived at a conclusion?

A. Using the same procedure that was used?

Q. Same procedures, that's correct.

A. By Mr. Prall.

Q. That's correct.

A. I think the most important thing would be to run a certified pure known standard of heroin at the same time the analysis was done, and also to run a blank determination. This is a determination where all the same steps are followed as with analyzing the substances, but the substance itself is not included. This insures that there is no possibility of any carry-over taking place from one sample to the next and also that the method is working. The data I would have received then from the analysis with both the standard and the unknown would then either be reduced manually or by a computer to a numerical form so that a mathematical comparison could be made as to how close these samples really match or do not match.

I also feel that I would have run another determination using a completely independent analytical technique to, of course, back up my conclusions I have come to from the gas chromatography-mass spectroscopy. This would be another spectroscopy, infrared, nuclear magniresidence. Even thin layer chromatography would have been a help.

Q. You feel there is insufficient data?

A. Yes.

Mr. Wiggins: I object.

THE COURT: The objection is sustained to the question, the answer stricken from the record and the jury instructed to disregard it.

I warn you, Counsel, not to ask this witness to invade the province of the jury. It is the third time I have mentioned it.

Q. What other tests would you have run?

A. In a case where I am looking for heroin, I would have purified the sample and done an infrared spectrum of the sample, again running a known standard immediately before, immediately after my unknown and making a comparison.

It appears that the trial court interpreted the stated questions as calling for the opinion of one expert as to the qualifications of another expert and sustained the objections of the government accordingly. The government now defends the claim of error on the same theory relying primarily on this court's decision in *United States v. Wainwright*, 413 F.2d 796, 800, *cert. denied*, 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501. In *Wainwright* we specifically held that a direct question posed to one expert as to the qualifications of another expert was improper. However, we do not deem the subject questions asked of the witness Dr. Wingeleth to necessarily constitute an attack upon the qualifications as such of the government expert. The answers called for by the questions would indicate only disagreement as to the conclusions reached by the government expert or, more specifically, a statement by the defendant's witness that no reliable conclusion could be reached because of incomplete chemical analysis. So viewed, the questions were proper and the government's objections should not have been sustained. However, we do not consider the error of preventing Dr. Wingeleth from stating his ultimate conclusion was of such prejudicial impact on the trial of the case as to require reversal. This witness was given full latitude in explaining what he considered to be proper procedures for reliable chemical analysis and the jury was adequately informed of the area of disagreement between the witnesses. We consequently affirm.