STATE OF NEBRASKA, APPELLEE, v. DARWIN GEORGE
WORKMAN, APPELLANT.

183 N. W. 2d 911

Filed February 19, 1971. No. 37704.

A. Q. Wolf and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Ralph
H. Gillan, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, SMITH,
McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an appeal from a judgment and sentence of
5 years on a guilty plea for the unlawful possession of
a depressant and stimulant drug. Defendant premises
his appeal on the unconstitutionality of the statute and
also on his assertion that the record fails to affirmatively
show defendant pled guilty voluntarily, understandingly,
intelligently, and with full knowledge of the rights he
was waiving by his plea. We affirm.

Defendant filed a brief herein, based solely on his contention that this case was controlled by Boykin v. Alabama, 395 U. S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274, because the court failed to advise the defendant specifically that by pleading guilty he was waiving his constitutional right to confront and cross-examine his accusers. The record herein sets out a detailed examination by the trial court before accepting a guilty plea, after permitting the defendant to withdraw his previous plea of not guilty. From the record there is no question in our mind but that the defendant knowingly and intelligently entered his plea herein, although the court did not specifically mention the right of confrontation. This phase of the case is controlled by State v. Turner, *ante* p. 424, 183 N. W. 2d 763.

A month after defendant filed his brief herein he filed a supplemental brief asserting for the first time alleged jurisdictional defects and the unconstitutionality of the statute. Defendant now charges that section 28-499, R. S. Supp., 1969, under which he was charged, is unconstitutional because section 28-486(8), R. S. Supp., 1969, defining depressant or stimulant drugs in part defines them with reference to the federal act.

Section 28-499, R. S. Supp., 1969, is as follows: "No person, other than a person described in section 28-497 or 28-498 shall possess any depressant or stimulant drug unless (1) such drug was obtained upon a valid prescription and is held in the original container in which such drug was delivered; or (2) such drug was delivered by a practitioner in the course of his professional practice and the drug is held in the immediate container in which such drug was delivered."

Section 28-486(8), R. S. Supp., 1969, is as follows: "(8) Depressant or stimulant drug shall mean:

"(a) Any drug which contains any quantity of (i) barbituric acid or any of the salts of barbituric acid; or (ii) any derivative of barbituric acid which has been

designated under section 502(d) of the federal act as habit-forming;

"(b) Any drug which contains any quantity of (i) amphetamine or any of its optical isomers; (ii) any salt of amphetamine or any salt of an optical isomer of amphetamine; or (iii) any substance designated by regulations promulgated under the federal act as habit-forming because of its stimulant effect on the central nervous system; or

"(c) Any drug which contains any quantity of a substance designated by regulations promulgated under the federal act as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect; * * *."

Section 28-486(11), R. S. Supp., 1969, should be read in conjunction with subsection (8) thereof. It provides: "(11) The term federal act shall mean the Federal Food, Drug, and Cosmetic Act, 52 Stat.1040 (1938), and all amendments thereto, 21 U. S. C. sections 301 to 392."

It is defendant's contention that the incorporation by reference from the federal act is an unconstitutional delegation by the Nebraska Legislature to an administrative officer of its powers to create criminal offenses in violation of Article II, section 1, and Article III, section 1, Constitution of Nebraska. There would be some merit to defendant's contention if we were to construe the statute to include federal regulations or law promulgated or enacted after the passage of our statute. This we do not do. As we said in State ex rel. Meyer v. Duxbury, 183 Neb. 302, 160 N. W. 2d 88: "Where a statute is susceptible of two constructions, one of which renders it constitutional and the other unconstitutional, it is the duty of the court to adopt the construction which, without doing violence to the fair meaning of the statute, will render it valid."

There can be little question but that incorporation by reference is permitted in Nebraska if the incorporation is of an existing law or regulation. See Anderson v. Tie-

mann, 182 Neb. 393, 155 N. W. 2d 322, in which we said: "It is conceded that the Nebraska Legislature may lawfully adopt by reference an existing law or regulation of another jurisdiction including the United States. Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227."

We interpret the statute to include those portions of the federal act referred to which were in existence on June 6, 1967, the effective date of section 28-486, R. S. Supp., 1969.

In his brief defendant attacks the constitutionality of section 28-490, R. S. Supp., 1969. This section permits seizure without warrant of certain drugs. The present record fails to disclose any seizure of drugs herein pursuant to that section. There is no motion to suppress or any other indication of such seizure of record. In any event, defendant's plea cured any defect if one was present. In the absence of very unusual circumstances, this court should not go behind pleas of counseled defendants to determine whether some potential evidence may have been unlawfully obtained. On this point, the following from McMann v. Richardson, 397 U. S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763, is very pertinent: "As we said in Brady v. United States, 397 U. S. at —, 90 S. Ct. at 1473-1474, 25 L. Ed. 2d at —, the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of facts on those facts find a confession voluntary and admissible? Ques-

tions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

"That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. Courts and judges continue to have serious differences among themselves on the admissibility of evidence, both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to particular facts."

Defendant was represented at the time of his plea by competent counsel from the same office with which his present counsel is associated.

Defendant further argues: "Sections 28-499, 28-487, and 28-489, R. S. Supp., 1969, making it a felony to merely possess a depressant or stimulant drug, amount to proscriptive action beyond the lawful limits of the state's police power into an area in which there is no legitimate state interest, rendering these provisions violative of the drug possessor's constitutional right of privacy and an imposition upon him of unconstitutional cruel and unusual punishment." This is indeed a novel approach in this jurisdiction. It is defendant's argument that a body of constitutional law is emerging, holding that a state has no legitimate interest in legislating against specific acts of individuals when such acts, however harmful to the individual performing them, have no substantially harmful effect on others. Without citing cases in point on this broad constitutional question, the defendant is in effect contending that the State should not prohibit the possession of narcotics. Without comment on the serious social and moral problem created

by the drug traffic, we point out that defendant is making his contentions in the wrong forum. They might appropriately be addressed to the Nebraska Legislature, but it is the duty of this court to interpret and enforce laws passed by the Legislature if constitutionally valid, which this one is.

Defendant's last assignment of error is to the effect that the district court lacked jurisdiction to accept a guilty plea because the information purporting to charge the defendant failed to contain a distinct allegation of each essential element of the crime as defined by section 28-499, R. S. Supp., 1969. The information adequately alleged the commission of a crime by the defendant. The information, so far as material on this point, reads: "* * * Darwin George Workman * * * did unlawfully possess a depressant or stimulant drug without a valid prescription, and not held in the original container in which such drug was delivered or not delivered by a practitioner in the course of his professional practice, * * *." This is essentially the language of section 28-499, R. S. Supp., 1969, set out above, rearranged to charge the crime involved in that section. In any event, if there were merit to defendant's contention, it would have been waived by his plea of guilty.

Section 29-1812, R. R. S. 1943, provides: "The accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment or pleading in bar or the general issue."

In State v. Fiegel, 184 Neb. 704, 171 N. W. 2d 643, we held: "All defects that may be excepted to by a motion to quash an information are taken to be waived by defendant pleading the general issue."

There is no merit to any of defendant's assignments of error, and the judgment is affirmed.

AFFIRMED.

WHITE, C. J., took no part in the consideration of this case.

McCown, J., dissenting.

The issue of constitutionality was raised here. It rests on the ground that the Legislature may not lawfully delegate its power to create criminal offenses to an administrative or executive official or body. In Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227, this court held that the Legislature may not lawfully delegate legislative powers to an administrative or executive authority. In that case, the administrative authority was the Department of Agriculture and Inspection of the State of Nebraska. We also held that: "The Legislature cannot delegate its power to create criminal offenses and prescribe penalties to an administrative or executive authority. Such powers are exclusively legislative * * *."

The major impact of the Finigan case on the case here is its holding that in this state all public offenses are statutory and no person can be punished for any act or omission which is not made penal by the plain import of a properly enacted statute.

The majority opinion holds that L.B. 876 of the 1967 Legislative Session relating to depressant and stimulant drugs incorporated by reference those portions of the Federal Food, Drug, and Cosmetic Act "which were in existence on June 6, 1967."

Of course, the Legislature could have incorporated provisions of the federal act as it then existed by reference. The principal specific reference was to section 502(d) (Title 21 U. S. C., § 352). That subsection is headed "Habit forming substances." It includes both narcotic and hypnotic substances. It describes 16 other substances in addition to the barbituric acid referred to in subsection (8)(a) of section 28-486, R. S. Supp., 1969. Most of these come under the category of narcotics. That subsection also authorizes the Secretary of Health, Education, and Welfare by regulation to designate any chemical derivative of the named substances which are found to be habit forming. Subsections (8)(b) and (8)(c) of

section 28-486, R. S. Supp., 1969, also refer to "regulations promulgated under the federal act" and not to any provisions of the act itself. The federal act, of course, authorizes promulgation of regulations by the Secretary of Health, Education, and Welfare.

Section 28-485, R. S. Supp., 1969, declares the legislative purpose to regulate and control the manufacture, distribution, delivery, and possession of depressant and stimulant drugs "as defined in sections 28-458 and 28-485 to 28-4,108." Section 28-458, R. S. Supp., 1969, which was section 25 of L.B. 876, 1967 Legislative Session, specifically gives the Nebraska State Board of Health the power "to determine * * * whether any exempt medicinal preparation possesses addiction-forming or addiction-sustaining liability which, in its opinion, will result in abusive use." The State Department of Health clearly has the authority to make such preparations exempt or nonexempt.

In legislative debate on L.B. 876, Senator Swanson stated: "Senator Carpenter's amendment which was also just read has to do with a particular exemption as far as the sale of codeine is concerned, and also the ability of the state health department to place on the illegal drug list, any drug that might presently be cleared. If they find that it is a depressant or a stimulant, if it is a narcotic that should not be on the cleared list, they now have the authority through his amendment to place it on the illegal drug list." 1967 Legislative Floor Debate, p. 2318.

The definition of "narcotic drugs" adopted by the Legislature in 1969, in section 28-451, R. S. Supp., 1969, provides: "(14) Narcotic drugs shall mean coca leaves, opium, cannabis, isonipecaine, amidone, isoamidone, ketobemidone, every substance neither chemically nor physically distinguishable from them, any other drugs to which the federal laws or regulations relating to narcotic drugs may now or hereafter apply, and any drug found by the Director of Health, after reasonable notice

and opportunity for hearing, to have addiction-forming or addiction-sustaining liability similar to morphine or cocaine from the date of publication of such finding by the director."

Section 28-4,108, R. S. Supp., 1969, also gives the Superintendent of Law Enforcement and Public Welfare the power to make such rules and regulations as are necessary for the effective administration of the act governing depressant and stimulant drugs and specifically gives the authority to "make such rules and regulations conform so far as practicable to those promulgated under the federal act."

Even if it be assumed that the Legislature intended to incorporate portions of the federal act, the only specific portions of the federal act ever mentioned or identified by the Legislature are sections 502(d), 511(d), and 511(f). Section 502(d) has already been discussed. Section 511(d) deals with records to be kept, and section 511(f) deals with the exemption of depressant and stimulant drugs by the secretary. Their corresponding code references are Title 21 U. S. C., §§ 352(d), 360a(d), and 360a(f). The depressant or stimulant drugs exempted by the secretary under section 511(f) of the federal act are specifically exempted from the application of the Nebraska law by section 28-4,105, R. S. Supp., 1969.

At no place in the Nebraska act did the Legislature ever identify any specific regulation under the federal act, either by date or by location, in the federal register. It only referred generally to "regulations promulgated under the federal act." Surely such an indefinite reference to regulations cannot be treated as a valid incorporation by reference, in a criminal statute involving illegal possession, where a sentence of 5 years in prison for a first offense can be given, as it was here. The drug involved in this case, aside from its identification in the information as a "stimulant or depressant drug," was referred to only as "a new-found drug."

The Legislature quite properly assumed the respon-

sibility of adopting statutes to regulate and control the manufacture, distribution, delivery, and possession of depressant and stimulant drugs. That legislative power can and should be exercised for the public health and safety to create criminal offenses and prescribe penalties. Unless our previous decisions are to be overruled, however, all public offenses in this state are statutory and it is clear that the Legislature cannot delegate its power to create criminal offenses to the Director of Health of the State of Nebraska, much less to the Secretary of Health, Education, and Welfare of the United States. A general reference to administrative regulations under the federal Food, Drug, and Cosmetic Act is wholly insufficient to incorporate a specific unidentified regulation into a Nebraska criminal statute by reference. This is particularly true when the date any incorporation is to be effective, as well as the date and identification of the elusive regulation or regulations which are to be incorporated, are completely omitted from the statute which is supposed to incorporate them.

It is not only advisable, but essential, that the deficiencies to which reference has been made here be called to the attention of the Legislature. The statutes involved, insofar as they attempted to delegate to a state or federal administrative agency the power to create criminal offenses by designating a particular drug, not legislatively identified in the statute as being proscribed, was clearly unconstitutional.