**STATE of North Dakota, Plaintiff and Respondent,**

v.

**Larry JULSON, Defendant and Appellant.**

**Cr. No. 419.**

Supreme Court of North Dakota.

Oct. 30, 1972.

Rehearing Denied Nov. 29, 1972.

William R. Mills, Bismarck, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Richard B. Thomas, State's Atty., and Wallace D. Berning, Asst. State's Atty., Minot, for plaintiff and respondent.

KNUDSON, Judge.

The defendant, Larry Julson, was charged with the unlawful sale of lysergic acid diethylamide (hereinafter LSD), an hallucinogenic drug, to Nancy Swenson and Robert Mackley on September 30, 1969. The place of trial was moved from Minot, Ward County, to Fargo, Cass County, upon the motion of the defendant for a change of venue. The defendant was found guilty by a jury. The defendant moved for a new trial, which motion was denied by the trial court. The defendant also filed an application for a post-conviction hearing, which also was denied by the trial court.

The defendant appeals from the judgment of conviction, from the denial of his motion for a new trial, and from the denial of post-conviction relief.

The defendant has assigned fifteen specifications of error, which he has grouped into the following issues:

1. The jurors were allowed to separate without leave of the court after being given the case to deliberate.

2. Prejudicial material was presented to the jury over objections and of a highly inflammatory nature.

3. The record fails to show the jurors were properly admonished not to discuss

the case with each other or others prior to its submission to them.

4. After the court made a rule in the case that cross-examination would be limited, the defendant elected to testify and then the judge changed the rule to defendant's prejudice.

5. The testimony given by the witness Nancy Swenson was unworthy of belief and a guise to inject prejudicial inadmissible evidence.

6. The statute and cross-reference required charge an offense too loosely to fulfill the requirements of due process.

7. The delegation of authority to define what drugs are illegal and the delegation of authority to decide who shall decide what drugs are illegal is an unconstitutional delegation of legislative authority.

8. The record fails to establish that at the time of trial the prosecution established the alleged fact that LSD had been designated by appropriate authority as a drug prohibited by the statute.

We will discuss this appeal on the basis of the issues listed above.

We will first consider issues numbered 6, 7, and 8, all relating to the unlawful delegation of legislative power to an administrative body, and the indefiniteness in the statutes and regulations in designating LSD as a drug within that class of drugs prohibited for sale by law.

The Criminal Information in this case charges that:

Larry Julson on September 30, 1969, did commit the crime of

Sale of Hallucinogenic Drugs

committed as follows:

Larry Julson did sell to Robert Mackley and Nancy Swenson Hallucinogenic Drugs, to-wit:

Lysergic Acid Diethylamide

in violation of

Section 19–02.1–01 subsection 23 19–02.1–02 subsection 16 and Section 19–02.1–04 subsection 4 of the North Dakota Century Code

The question before us is whether this sale of LSD was in violation of the provisions of the North Dakota Food, Drug, and Cosmetic Act, enacted by the 1967 Legislative Assembly (1967 S.L., chapter 168), Chapter 19–02.1 of the 1967 Supplement of the North Dakota Century Code, as amended by the 1969 Legislative Assembly (1969 S.L., chapter 230), Chapter 19–02.1 of the 1969 Supplement of the North Dakota Century Code.

Section 19–02.1–01, subsection 23, of the 1969 Supplement to the North Dakota Century Code was enacted by the 1969 Legislative Assembly (1969 S.L., chapter 230, § 1), as supplementary and in addition to the North Dakota Food, Drug, and Cosmetic Act enacted by the 1967 Legislative Assembly, Chapter 19–02.1 of the 1967 Supplement to the North Dakota Century Code (1967 S.L., chapter 168).

Section 19–02.1–01, subsection 23, reads as follows:

19–02.1–01. Definitions. For the purpose of this chapter:

23. "Depressant, stimulant, or hallucinogenic drug" means:

a. Any drug which contains any quantity of

(1) Barbituric acid or any of the salts of barbituric acid; or

(2) Any derivative of barbituric acid which has been designated under section 502(d) of the *Federal Act* as habit-forming;

b. Any drug which contains any quantity of:

(1) Amphetamine or any of its optical isomers; or

(2) Any salt of amphetamine or any salt of any optical isomer of amphetamine; or

(3) Any substance designated by regulations promulgated under the *Federal Act* as [having a potential for abuse] because of its depressant or stimulant effect on the central nervous system:

c. Any drug which contains any quantity of a substance designated by regulations promulgated under the *Federal Act* as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect.

[Emphasis added.]

The "Federal Act" referred to in Section 19–02.1–01, subsection 23, is defined in Section 19–02.1–01, subsection 22, of the 1967 Supplement to the North Dakota Century Code (1967 S.L., chapter 168, section 2, subsection 22), and reads as follows:

22. *"Federal Act"* means the Federal Food, Drug, and Cosmetic Act, as amended (Title 21 U.S.C. 301 et seq.). [Emphasis added.]

It appears to be the argument of the defendant that LSD had not been designated as an hallucinogenic drug by the Department of Health, Education, and Welfare at the time of the enactment of the 1967 North Dakota Food, Drug, and Cosmetic Act, but that it had been designated as an hallucinogenic drug by the office of the Attorney General after the enactment of the 1967 North Dakota Food, Drug, and Cosmetic Act. However, we find that lysergic acid diethylamide (LSD–25; LSD) had been designated as having an hallucinogenic effect by the Regulations promulgated on March 16, 1966, (31 F.R. 2.120; 31 F.R. 3008). This order became effective on May 18, 1966, (31 F.R. 7175, May 17, 1966) and was in full force and effect on July 1, 1967, the effective date of the 1967 North Dakota Food, Drug, and Cosmetic Act. Session Laws 1967, chapter 168; Chapter 19–02.1, 1967 Supp. N.D.C.C.

Therefore, we find that there is no merit to this argument, as we find that LSD had been defined by order promulgated by the proper authority, the Secretary of Health, Education, and Welfare, as a drug having an hallucinogenic effect prior to the enactment of the 1967 North Dakota Food, Drug, and Cosmetic Act, and which order was in full force and effect at the time of the alleged commission of the offense by the defendant by virtue of its incorporation by reference into the North Dakota Food, Drug, and Cosmetic Act.

As to the contention of the defendant that the delegation to define what drugs are illegal to an agency of the federal government was an unconstitutional delegation of legislative power, the general rule is that it is permissible for one statute to adopt the particular provisions of another statute by specific and descriptive reference to the statute or provision adopted. We said in Egbert v. City of Dunseith, 74 N.D. 1, 24 N.W.2d 907 (1946), at Court syllabus 6:

One rule applied in the construction of statutes is that where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provision adopted, the effect is the same as though the statute or provision adopted had been incorporated bodily into the adopting statute. Such adoption takes the statute as it existed at the time of adoption and does not include subsequent additions or modifications of the statute so taken, unless it does so by express intent or necessary implication.

The Nebraska Supreme Court in construing a statute similar to ours has said that the legislature may adopt by reference an existing law or regulation of the United States.

There can be little question but that incorporation by reference is permitted in Nebraska if the incorporation is of an existing law or regulation. See Anderson v. Tiemann, 182 Neb. 393, 155 N.W.

2d 322, in which we said: "It is conceded that the Nebraska Legislature may lawfully adopt by reference an existing law or regulation of another jurisdiction including the United States, Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N.W.2d 227."

State v. Workman, 186 Neb. 467, 183 N. W.2d 911, 913 (1971).

The defendant cites, in support of his contention that the adoptive statutes are unconstitutional as an attempt to include federal regulations promulgated after the effective date of the 1967 North Dakota Food, Drug, and Cosmetic Act, the case recently decided by the South Dakota Supreme Court, State v. Johnson, 84 S.D. 556, 173 N.W.2d 894 (1970), construing a similar statute adopting by reference the federal Act, "and all amendments," as an attempt to adopt future laws, rules or regulations of the federal government, and which court held that such attempt to adopt any and all regulations and changes promulgated under the federal Act in futuro ad infinitum was an unlawful delegation of legislative power.

■ Whatever difference there may be in the meaning of the terms "and all amendments" in the South Dakota statute and "as amended" in the North Dakota statute is not determinative of this issue in this case. It appears that the South Dakota court determined that the term "and all amendments" was an attempt to adopt by reference any and all regulations and changes promulgated under the federal Act in the future. We do not so construe our statute. We are of the opinion that the term "as amended" in our statute refers to the federal Act "as amended" at the time of the enactment of the adoptive statute adopting by reference the federal Act and the regulations and changes promulgated prior to the enactment of the adoptive statute.

■ In any case, we note that when a statute is susceptible of two constructions, one of which renders it unconstitutional and the other constitutional, it is the duty of the court to adopt the construction which, without doing violence to the fair meaning of the statute, will render it valid. In Wallentinson v. Williams County, 101 N.W.2d 571, 573 (N.D.1960), we said at syllabus 5:

> In construing a statute, courts will avoid a construction which will hold such statute invalid, and such construction will not be adopted when the law is susceptible of another construction which is reasonably in harmony with the apparent object sought to be accomplished by the Legislature.

It is our conclusion that the reference to the federal Act in § 19–02.1–01(23) adopted by reference the federal Act and the regulations promulgated thereunder which were in effect on July 1, 1967, the effective date of § 19–02.1–01(22), 1967 Supplement to the North Dakota Century Code, defining "Federal Act" to mean the Federal Food, Drug, and Cosmetic Act, "as amended," (Title 21 U.S.C. § 301 et seq.), as of July 1, 1967.

■ Statutes adopting by reference the laws of the federal government and the regulations promulgated thereunder by one of its agencies in existence at the time of the enactment of the adopting statutes is not an unlawful delegation of legislative power. We do not construe, in this case, the adopting statutes as attempting to adopt future laws, rules or regulations of the federal government.

In Schryver v. Schirmer, 84 S.D. 352, 171 N.W.2d 634 (1969), cited in State v. Johnson, *supra,* the South Dakota Supreme Court said that statutes adopting laws or regulations of other states, the federal government, or any of its agencies, effective at the time of adoption, are valid.

The South Dakota Supreme Court agrees with our conclusion that the adoption by reference of laws or regulations of

other states or the federal government in effect at the date of adoption are valid.

■■ Giving consideration to the contention of the defendant that the statute is too loosely drawn, we find, upon a review of the state and federal statutes, that the State Food, Drug, and Cosmetic Act is not too loosely drawn to give adequate warning of the conduct proscribed and to mark the boundaries sufficiently distinct for judges and juries to fairly administer the Act.

The State Food, Drug, and Cosmetic Act incorporating by reference the Federal Food, Drug, and Cosmetic Act, and also the regulations promulgated in conformity therewith, describe the criminal offense with sufficient definiteness to meet the requirements of due process. In the present case, the state statutes, the federal Act, and the regulations promulgated thereunder, clearly describe the offense for which the defendant is charged.

A penal statute must set up ascertainable standards. . . . All that is required is that the language, when measured by common understanding and practices, give adequate warning of the conduct proscribed and mark boundaries sufficiently distinct for judges and juries fairly to administer the law. In determining whether adequate warning is given, the court should view the statute from the standpoint of the reasonable man who might be subject to its terms.

21 Am.Jur.2d Criminal Law, § 17, p. 99.

We will now discuss the defendant's issues 2 and 4 together:

(2) That prejudicial material of a highly inflammatory nature was presented to the jury over objections; and

(4) That after the court ruled in the case that cross-examination would be limited, the defendant elected to testify and then the judge changed the rule to defendant's prejudice.

The court, during the presentation of the State's case, sustained objections made by the State's Attorney to questions propounded to a State's witness by the attorney for the defendant for the purpose of the impeachment of the State's witness, and ruled:

THE COURT: . . . If I understand the rule correctly, evidence of a conviction of a crime is admissible but not the details.

After the cross-examination of the State's witness was completed the trial court restated more fully his ruling relating to the scope of cross-examination to impeach the general credibility of a witness, and the credibility of the testimony of a witness, in the following language, paraphrasing what this Court said in State v. Malmberg, 14 N.D. 523, 105 N.W. 614, 615:

There is a wide distinction between evidence which affects the general credibility of a witness and evidence which affects the credibility of a witness's testimony in a specific case. Both are proper subjects of cross-examination. Evidence of facts which affect only general credibility such as conviction of crime, evil associations, and the like, can in general be shown only by cross examination of the witness, and the examination is concluded by the answers, however false they may be. Evidence of facts which do not detract from his general credit such as animosity to the party, which tend to diminish his credit and capacity to testify correctly in the particular case has a different rule. That is the rule.

At the conclusion of this statement by the trial court the State rested.

Whereupon, after the State rested, the defendant took the stand in his own defense, and after questions as to name, age, occupation and domicile, the defendant denied selling any illegal drugs to Mr. Mackley or Miss Swenson on September 30, 1969.

The State's Attorney proceeded to cross-examine the defendant, who upon being asked if he was a user of LSD, answered that he was not. The State's Attorney continued to cross-examine the defendant to impeach the credibility of the testimony of the defendant of his denial of being a user of LSD by asking the defendant a series of questions: if he had purchased LSD, or if he associated with others that may have been users of LSD, all of which he answered in the negative, and none of which questions were objected to.

The defendant complains that the cross-examination of himself as to his use of LSD, as to the purchase of LSD from one Carl Severson, and as to his association with alleged users of LSD, introduced prejudicial material of a highly inflammatory nature, and was not within the limitations of the rule made by the judge as to the scope of the cross-examination.

The State offered no testimony by other witnesses to rebut the denial of the use by the defendant of LSD. The truthfulness of the answers of the defendant denying the use of LSD was for the jury to determine.

■ It is a general rule that in order to take advantage of the admission of evidence by the trial court as error and to secure a reversal of its judgment upon appeal, the evidence must be objected to in the trial court. Likewise, when no objection is made to cross-examination, neither the propriety thereof nor the competency of the testimony brought out thereby may be questioned on appeal. 5 Wharton's Criminal Law and Procedure, § 2044, p. 189.

Any objection to the admissibility of evidence is waived by failing to object thereto. If defendant fails to object to evidence when first offered, he waives its competency. 5 Wharton's Criminal Law and Procedure, § 2047, p. 191.

In State v. McCray, 99 N.W.2d 321 (N.D.1959), this Court held, at syllabus 4:

Objections to evidence not raised in the trial court will not be considered on appeal.

And the Court of Appeals of Michigan, in a recent decision, People v. Peck, 39 Mich.App. 150, 197 N.W.2d 346, 350 (1972), citing People v. Hider, 12 Mich.App. 526, 163 N.W.2d 273 (1968), and People v. Lohn, 21 Mich.App. 235, 175 N.W.2d 307 (1970), said:

Failure to raise an objection in the trial court precludes a determination of the issue on appeal.

The proper time to object to the introduction of evidence is when it becomes apparent that error will be committed by receiving evidence which is not admissible, as when the evidence is offered, or when a question is asked which is in itself improper or calls for an improper answer.

■ An objection to a question comes too late after the question has been answered. The remedy in such case is a motion to strike the question and answer from the record. 5 Wharton's Criminal Law and Procedure, § 2046, p. 191. No motion to strike was made in the case under consideration.

■ The defendant contends that the testimony of the witness Nancy Swenson was unworthy of belief, and was a guise to inject prejudicial inadmissible evidence.

We will discuss the testimony of Miss Swenson, Robert Mackley, and Mr. Blore, from which we deduce that such testimony refutes the defendant's contention.

At the preliminary hearing both Nancy Swenson and Robert Mackley testified that they had purchased the LSD from two unidentified airmen. Several days after the

preliminary hearing and before the trial, Nancy Swenson and Robert Mackley each gave a written statement, signed by each, wherein each said that they had purchased the LSD tablets from the defendant Larry Julson.

Robert Mackley, called as a witness by the State, testified that he and Nancy Swenson had purchased two tablets of LSD from Larry Julson, and that Nancy Swenson had taken the two tablets home with her.

Nancy Swenson was subpoenaed as a witness by the State, and, on petition by the State, she was granted immunity by order of the court. On direct examination she was equivocal, vague, indefinite, and evasive in her answers as to from whom she and Robert Mackley had purchased the two tablets of LSD. Accordingly, the State's Attorney, for the purpose of impeachment, read from the written statement she had given to the State's Attorney her admission that she had purchased a "pill" from Larry Julson for which she gave him $5.00. She admitted that she had said so in the statement, but that in saying so in the statement she had made an error, and that the statement was not her true testimony. She admitted that she had signed the statement. The State then offered the statement in evidence as Exhibit 1, but the court did not admit the statement because the court held that the State had not laid a proper foundation for the admission of her written statement as she had not been shown to be a hostile witness "at the present time," and the court admonished the jury to disregard anything read by the State's Attorney from her statement "as of now."

After further examination by the State for the purpose of laying a foundation for the admission of the written statement by showing Nancy Swenson to be a hostile witness, the court found her to be a hostile witness and permitted the State to treat her as a reluctant and hostile witness, allowed the State to ask leading questions, and admitted her written statement in evidence as State's Exhibit 1. Although on direct and on re-direct examination she continued to equivocate and to be vague, indefinite and evasive in her testimony in naming Larry Julson as the person who sold her a tablet of LSD, she did testify that Larry Julson handed the tablets of LSD to Robert Mackley, who handed the tablets of LSD to her, and she, in turn, handed them to Mr. Blore, who was the supervisor of the Juvenile Court of Ward County in Minot.

William H. Blore testified he had been investigating the drug problem at Minot High School; that Robert Mackley had admitted to him that he and Nancy Swenson had purchased LSD from the defendant. At the request of Robert Mackley by telephone, Nancy Swenson brought the two tablets to Mr. Blore. Mr. Blore delivered these tablets to the Minot Police Department, who sent the tablets to the State Laboratories Department in Bismarck for analysis. Analysis of the tablets indicated they contained LSD.

■ The appellant in his reply brief raises the issue of the constitutionality of the statutes under which the defendant was convicted, contending that the statutes were adopted in violation of the provisions of § 64 of the North Dakota Constitution. The appellant having raised a constitutional question as to the validity of a statute under which he was convicted, we will consider this issue.

Section 64 of the North Dakota Constitution provides:

No bill shall be revised or amended nor the provisions thereof extended or incorporated in any other bill by reference to its title only, but so much thereof as is revised, amended or extended or so incorporated shall be re-enacted and published at length.

The appellant cites in support of his contention the case of State ex rel. Gammons v. Shafer, 63 N.D. 128, 246 N.W. 874 (1933), wherein we held at syllabus 5:

A statute complete in itself, and which is not dependent upon other statutes for the complete expression of the legislative purpose, does not conflict with section 64 of the Constitution.

This contention is not relevant in the present case, as the State ex rel. Gammons case does not relate to the question of the inclusion of other statutes by reference in the adoptive statute.

State ex rel. Gammons v. Shafer, *supra,* said that statutes complete in themselves are not in conflict with § 64 of the Constitution merely because they amend other statutes by reference.

██ The defendant complains that the jurors were allowed to separate, after submission of the case to the jury, without leave of court. Section 29–22–02, N.D.C.C., prescribes the rules which should govern the conduct of the jury after the case is submitted to them.

The jurors shall retire in charge of one or more officers who must be sworn to keep them together in some private and convenient place until they have rendered their verdict. Such officer or officers shall furnish food and other necessaries to the jurors, at the expense of the county, as directed by the court, and shall not speak to nor communicate with such jurors or any of them nor permit any other person so to do except by order of the court. Men and women jurors may retire, when rest or sleep or propriety requires it, to separate rooms.

It appears that the jurors went to a restaurant for lunch in three cars furnished by the Cass County sheriff at the request of the chief bailiff. Each car was driven by a deputy sheriff, with a bailiff in the lead car and a bailiff in the rear car, with only a deputy sheriff in the middle car. The jurors were kept together by the two bailiffs in the restaurant at one table. The deputy sheriff drivers were at another table. There is no showing by affidavit, or otherwise, of any attempt to influence the jurors on the way to lunch in the car driven by the deputy sheriff, unaccompanied by a bailiff, nor is there any showing of misconduct on the part of the jurors, bailiffs or officers. The defendant, in his brief, acknowledges that while this complaint may not be sufficient grounds for a new trial it does seem to be improper. We should note that in this case the Cass County deputy sheriffs had no interest in the case, which arose in Ward County and was tried in Cass County district court by Ward County officials on a change of venue from the Ward County district court to the Cass County district court. It affirmatively appears from the record that no prejudice resulted from the mode in which the jurors were taken to lunch and returned to the court house. Where it appears that no improper influences were used or attempted, such separation furnishes no ground for a new trial. State v. Kent, 5 N.D. 516, 67 N.W. 1052, 35 L.R.A. 518.

██ The contention that the record fails to show that the jurors were properly admonished not to discuss the case with each other or others prior to its submission to them is without foundation. Section 29–21–28, N.D.C.C., provides that the jurors at each adjournment of the court must be admonished by the court not to converse among themselves or with anyone else on any subject connected with the trial. The practice in Judge Redetzke's court is that the judge makes this admonition to the entire jury panel at the beginning of the term, and follows that full admonition at appropriate times during the trial of a case with a statement to the jurors, "Members

of the Jury, bear in mind the Court's usual admonition." The defendant has not shown that he has been prejudiced by the practice of Judge Redetzke's use of a short form of admonition. While it may be better practice to repeat the full admonition at each adjournment, we find that giving the admonition in short form was not prejudicial to the defendant. Furthermore, the act complained of occurred during the trial and was not objected to by the defendant.

and cannot, therefore, be now urged as error.

For reasons stated in the opinion, we sustain the trial court in denying the motion for a new trial, and in denying the post-conviction relief. The judgment of conviction is affirmed.

STRUTZ, C. J., and PAULSON, ERICKSTAD and TEIGEN, JJ., concur.