SIDNEY EDUCATION ASSOCIATION, AN UNINCORPORATED ASSOCIATION, APPELLEE, V. SCHOOL DISTRICT OF SIDNEY, IN THE COUNTY OF CHEYENNE, STATE OF NEBRASKA, ALSO KNOWN AS SIDNEY PUBLIC SCHOOLS, A POLITICAL SUBDIVISION, APPELLANT.

203 N. W. 2d 762

Filed January 26, 1973.  No. 38457.

Wilson, Barlow & Watson, for appellant.

Crosby, Pansing, Guenzel & Binning and Theodore L. Kessner, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and RONIN, District Judge.

SPENCER, J.

This appeal is from an order of the Court of Industrial Relations ordering School District of Sidney, hereinafter referred to as District, to recognize Sidney Education Association, hereinafter referred to as Association, as the representative of its members, and directing it to undertake good faith negotiations with Association on

terms and conditions of employment in accordance with the Industrial Relations Act.

On September 7, 1971, pursuant to the provisions of the Nebraska Teachers' Professional Negotiations Act, hereinafter referred to as TPNA, the appellee by letter requested recognition as the bargaining representative of the certified employees of District. The text of the letter read:

"The Sidney Education Association represents a majority of the certified school employees of your District on matters of employment relations.

"To implement the provisions of the Nebraska Teacher's Professional Negotiations Act, Section 79-1287 to 79-1295, you are requested to:

"1. Recognize the Sidney Education Association as the representative of the certificated employees of your District in their professional and employment relations.

"2. Meet and confer with the Negotiation Committee of the Sidney Education Association regarding employment and professional relations with certificated employees in the following areas:

"(a) Salaries
    "(1) Salary-Index Schedule
    "(2) Salary Base
"(b) One full hour of free planning time for elementary certified employees
"(c) Comparable compensation for extra-curricular-activity sponsors
"(d) Fringe benefits
    "(1) Income-Protection Insurance
    "(2) Family plan Health, Accident, and Major Medical Insurance
    "(3) Life Insurance
"(e) Class size

"Pursuant to law, your written decision on the following requests should be made within 30 days of the date hereof and mailed or delivered to: Mr. Wilburt

Higuchi, President of the Sidney Education Association, Sidney, Nebraska.

"Upon acceptance of the requests to negotiate, we will cooperate with you in scheduling the first negotiation meeting, which is to be held within 21 days after your acceptance.

"We look forward to good faith negotiations with the Board of Education on each of the items set forth above within the framework of the Nebraska Teachers' Professional Negotiations Act."

A special meeting of the board of education was held on September 22, 1971. By a four to two vote, the board declined to recognize Association as the representative of the certificated employees of District. On October 1, 1971, District notified Association of its decision to decline recognition, and set out section 79-1290, R. S. Supp., 1969, therein.

Association then sought relief in the Court of Industrial Relations, petitioning that court to render orders necessary and appropriate to resolve its dispute with District. District filed a special appearance, challenging the jurisdiction of the Court of Industrial Relations, which was overruled. District then filed an answer, reserving the special appearance. The Court of Industrial Relations found it had jurisdiction because the TPNA had been exhausted without resolution of the dispute. On January 28, 1972, that court ordered District to recognize Association, and to undertake good faith negotiations in accordance with the Industrial Relations Act. District perfected this appeal.

Association argues section 79-1290, R. S. Supp., 1969, prevents the entry of any order requiring it to bargain with District. It contends further that the Court of Industrial Relations is without jurisdiction because the remedies provided by TPNA have not been exhausted.

Section 79-1290, R. S. Supp., 1969, provides as follows: "Notwithstanding the provisions of sections 79-1287 to 79-1296, no board of education or school board

of any public school district in the state shall be required to meet or confer with representatives of an organization of certificated school employees unless a majority of the members of such board determines to recognize such organization. Any such recognition shall be and remain in effect for a period of one year."

Section 48-810, R. S. Supp., 1969, provides as follows: "All industrial disputes involving governmental service, service of a public utility, or other disputes as the Legislature may provide shall be settled by invoking the jurisdiction of the Court of Industrial Relations; Provided, such court shall have no jurisdiction over any persons, organizations, or school districts subject to the provisions of the Nebraska Teachers' Professional Negotiations Act, sections 79-1287 to 79-1295, Revised Statutes Supplement, 1967, until all provisions of such act have been exhausted without resolution of the dispute involved."

Section 48-801, R. S. Supp., 1969, provides in part as follows: "Industrial dispute shall include any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or refusal to discuss terms or conditions of employment; * * *."

Section 48-837, R. S. Supp., 1969, provides as follows: "Public employees shall have the right to form, join and participate in, or to refrain from forming, joining, or participating in, any employee organization of their own choosing. Public employees shall have the right to be represented by employee organizations to negotiate collectively with their public employers in the determination of their terms and conditions of employment, and the administration of grievances arising thereunder; Provided, that any such agreements with the State of Nebraska or any agency thereof shall cover a biennial period coinciding with the biennial budgeting period of

the state and shall be subject to approval by the Legislature."

It is apparent that there appears to be a conflict between some of the provisions set out above. It arises because the TPNA (section 79-1290, R. S. Supp., 1969) provides no school board shall be required to meet or confer with representatives of an organization of certificated teachers unless a majority of the board determines to recognize such organization. Section 48-837, R. S. Supp., 1969, however, provides public employees *shall* have the right to organize and be represented by their organization. It would appear that if the employees have the right to be represented collectively then it must be assumed that if the employer refuses to deal with the association their remedy must be in the Court of Industrial Relations.

It cannot be maintained that teachers and their employers are not within the purview of Chapter 48. Section 48-801 (5), R. S. Supp., 1969, defines employees as including any person employed by any employer, as defined in sections 48-801 to 48-823. Section 48-801 (4), R. S. Supp., 1969, states: "Employers shall mean any political or governmental subdivision of the State of Nebraska * * *." Section 48-810, R. S. Supp., 1969, expressly provides that following exhaustion of the TPNA, teachers come within the protection of the Industrial Relations Act. See School Dist. of Seward Education Assn. v. School Dist. of Seward (1972), 188 Neb. 772, 199 N. W. 2d 752.

The Legislature did not place any limitation or restriction upon the right to negotiate terms and conditions of employment when it amended the Court of Industrial Relations Act in 1969. It simply placed a proviso requiring exhaustion of the TPNA before the exercise of the right to invoke the jurisdiction of the Court of Industrial Relations.

The Legislature did not say Class III, IV, and V school districts were excluded from that legislation, nor

did it hedge in any way the general rights granted to public employees to negotiate collectively or to deny that right to the certificated employees of those three classes to first seek their relief under TPNA. By so doing, the Legislature was retaining the special act relating to employees in these districts. It had been in operation for only 2 years and was operating satisfactorily in certain areas.

The Legislature chose to let the machinery for permissive negotiation for Class III, IV, and V school districts established by TPNA stand, but clearly, by amending the Court of Industrial Relations Act without repealing TPNA, it did not intend to deny the teachers employed by those school districts the rights granted to all other public employees. "When the Legislature subsequently enacts legislation making related preexisting laws applicable thereto, it will be presumed that it did so with full knowledge of the preexisting legislation and the judicial decisions of this court construing and applying it." Airport Authority of City of Millard v. City of Omaha (1970), 185 Neb. 623, 177 N. W. 2d 603.

Unquestionably, the provisions of TPNA make collective negotiations under that legislative enactment discretionary with District. Just as clearly, collective negotiations are permissive under that act. What the Legislature did was give the TPNA the first opportunity to adjust any differences between certificated employees and Class III, IV, and V school districts. When the provisions of TPNA were exhausted without settlement, then the Industrial Relations Act became operative as to those school districts.

We are, therefore, faced with the question as to whether the remedies provided by TPNA were exhausted before the action herein was filed with the Court of Industrial Relations. We determine there had been exhaustion sufficient to give that court jurisdiction. By declining to recognize Association, District exhausted

the provisions of TPNA without resolution of the dispute.

What is the dispute? Section 48-801, R. S. Supp., 1969, defines an industrial dispute to "include any controversy concerning * * * *representation of persons* in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or refusal to discuss terms or conditions of employment; * * *." (Italics supplied.) Here, it is the right of the teachers to join and be represented by Association in negotiations of the terms and conditions of their employment as set out in the letter to District. District argues the dispute was the right of Association to represent certificated employees, which under the TPNA it had a right to refuse. It exercised that right. However, the dispute still exists. Section 48-837, R. S. Supp., 1969, enacted in 1969, unequivocally grants teachers the right to negotiate collectively through their association. District, by its action prevents that representation and prevents negotiation on terms and conditions of employment. To construe the statutes to deny employees of the classes involved remedies afforded to all other public employees would raise a question as to the constitutionality of the act.

The pertinent question is whether the Industrial Relations Act, as amended in 1969, grants the Court of Industrial Relations authority to require a school district to deal with an employee's organization. The following extracts from School Dist. of Seward Education Assn. v. School Dist. of Seward (1972), 188 Neb. 772, 199 N. W. 2d 752, are appropriate herein: "L. B. 15 amended sections 48-801, 48-804, 48-810, 48-811, 48-816, and 48-818, and repealed sections 48-810.02, 48-820, and 48-824 to 48-836, R. R. S. 1943. It did not repeal or amend section 48-810.01, R. R. S. 1943, which came into the law in 1967. The question for our consideration, therefore, is whether or not there is a conflict between section 48-810.01, R. R. S. 1943, and section 48-818, R. S. Supp.,

1969. Section 48-810.02, R. R. S. 1943, provided that in cities having a population of more than 5,000, or in cities under civil service, the court had jurisdiction to order discussion on the application of either party. Section 48-820, R. R. S. 1943, provided that any industrial dispute not within the jurisdiction of the court could by mutual consent be referred to the court for arbitration. Sections 48-824 to 48-836, R. R. S. 1943, covered arbitration for cities of more than 5,000, or a city under civil service, but any decision or report would be advisory only. It is obvious that by eliminating these sections, the Legislature intended to eliminate advisory arbitration reports, and by L. B. 15 attempted to give the court authority to order bargaining.

"Section 48-810, R. S. Supp., 1969, provides that all industrial disputes involving governmental service *shall be settled* by invoking the jurisdiction of the Court of Industrial Relations, but limits the jurisdiction of the court where sections 79-1287 to 79-1295, R. S. Supp., 1967, are involved, *until* those provisions have been exhausted *without a settlement of the dispute*. It may be argued that section 48-810.01, R. R. S. 1943, was inadvertently left in the law. We do not accept this premise, but assume the Legislature acted with full knowledge that it was leaving this section in the statute. Consequently, the section must be given some meaning in relation to the other sections, because all statutes in pari materia must be considered together and construed as if they were one law, and, if possible, effect given to each provision. City of Grand Island v. Ehlers (1966), 180 Neb. 331, 142 N. W. 2d 770. The court construed section 48-810.01, R. R. S. 1943, to mean that while the court could not order a school district to enter into a contract, the court had the power to settle any controversy pursuant to sections 48-816 and 48-818, R. S. Supp., 1969. In doing so, it was not forcing the district to enter into a contract with the union but was exercising its power to settle a dispute under sec-

tion 48-818, R. S. Supp., 1969. There is no other construction which would harmonize the sections.

"Defendant's position is indicated by the following from its brief: 'Whatever jurisdiction the Court of Industrial Relations may have, this much is certain that notwithstanding any other provision of law the School District cannot be compelled to enter into any contract or agreement with any labor organization concerning rates of pay. The Court's judgment is in direct violation of this statute.' This, of course, is premised on its interpretation of section 48-810.01, R. R. S. 1943. We have indicated our interpretation.

"There have been many dire predictions relative to the possible ramifications of L. B. 15 if we do not find section 48-810.01, R. R. S. 1943, specifically prevents the court from entering a binding order on wages and conditions of employment. As we interpret the Constitution, the Legislature has complete control of the actions of school boards. Whether or not the Legislature has acted wisely in the premises is not a matter for judicial determination. The courts are not arbiters of legislative wisdom, but function as a check upon unauthorized and unconstitutional assumptions of power. If the situation is as critical as defendant and the amici curiae believe, we can only observe, as we did in State v. Workman (1971), 186 Neb. 467, 183 N. W. 2d 911: '* * * defendant is making his contentions in the wrong forum. They might appropriately be addressed to the Nebraska Legislature, but it is the duty of this court to interpret and enforce laws passed by the Legislature if constitutionally valid, * * *.' "

In the Seward case, the School District had recognized the Seward Education Association as the representatives of the certificated employees. Here, District refused to do so. Under section 48-810.01, R. R. S. 1943, and section 79-1290, R. S. Supp., 1969, it cannot be compelled to do so. By this action it has exhausted all remedies under TPNA, and the Court of Industrial Rela-

tions has acquired jurisdiction. Negotiation with District is now at an end, and Association may present all problems on terms and conditions of employment to the Court of Industrial Relations. Unless we so hold, we are faced with the question as to whether section 48-810.01, R. R. S. 1943, and section 79-1290, R. S. Supp., 1969, were repealed by implication.

In Stoller v. State (1960), 171 Neb. 93, 105 N. W. 2d 852, we said: "In accordance with the principle that the last expression of the legislative will is the law, in case of conflicting provisions of the same statute, or in different statutes, the last in point of time or order of arrangement prevails." Where, however, it is possible to harmonize apparently conflicting statutes, that must be done if possible. The construction we have placed on these statutes does just that. Every public employee is given the right to form and be represented by an association in collective negotiation of the terms and conditions of his employment. The Court of Industrial Relations has been authorized to protect that right. School districts included in TPNA cannot be required to meet or confer with employee associations. Those employees covered by the TPNA must await exhaustion of that act before invoking the court's jurisdiction, but this does not deny them the right. Rather, the right remains to be exercised if satisfaction has not been obtained by the exhaustion of TPNA.

If District refuses to recognize or negotiate with Association under the present law, it cannot be compelled to do so. The situation is then the same as if an impasse had been reached in negotiation and the problems are for solution by the Court of Industrial Relations.

The judgment is remanded to the Court of Industrial Relations for further proceedings in accordance with this opinion.

REMANDED FOR FURTHER PROCEEDINGS.

NEWTON, J., dissenting.

The opinion submitted by Spencer, J., holds, in substance, that sections 48-810.01 and 79-1290, R. S. Supp., 1969, do not conflict with other provisions of Chapter 48, article 8, R. S. Supp., 1969. It is stated that the Court of Industrial Relations has the power to settle any controversy over wages or working conditions and, in so doing, is not compelling the school district to enter into any contract but is simply settling a dispute. This is an obvious fallacy. Section 48-819, R. R. S. 1943, makes the orders of the court binding upon all parties and failure to comply is punishable by contempt proceedings. When the court sets wages or working conditions in any case, it is thereby compelling the school district to comply by entering into contracts with the members of the labor organization involved on the terms fixed. When contracts are thus extended to all members of the organization, it requires a very fine splitting of hairs to hold that no contract has been entered into with such labor organization. In truth and in fact, such organization has obtained its contract by court order and sections 48-810.01 and 79-1290, R. S. Supp., 1969, are rendered meaningless. These statutes cannot be reconciled with other sections of Chapter 48, article 8, R. S. Supp., 1969. They are diametrically opposed and unless given their clear meaning must be considered to have been repealed by implication.

It must be borne in mind that the act defining the powers of the Court of Industrial Relations, and the interpretation placed thereon, affects and applies to all political subdivisions, including not only school districts, but also counties, townships, cities and villages, and the State. All of these organizations have, by statute, been granted authority to employ necessary employees, enter into contracts with them, and fix wages and conditions of employment. Some instances pertaining to schools are found in sections 79-328, 79-441, 79-486, 79-519, 79-908, 79-1004, 79-1035, 79-1104, 79-1249,

79-1258, 79-1282, 79-1290, 79-1429, and 79-2619 (3), R. R. S. 1943. Others, pertaining to counties are found in sections 23-104 (6), 23-109, 23-135, 23-223, 23-224 (8), 23-260, 23-343.04, 23-904, 23-916, 23-1111, 23-1114, 23-1204, and 23-1209, R. R. S. 1943, and R. S. Supp., 1969. Has Chapter 48, article 8, R. S. Supp., 1969, amended all these statutes, and similar sections pertaining to other political subdivisions, by implication? If so, the amendment or repeal is of wholesale proportions and section 48-810, R. S. Supp., 1969, is in violation of Article III, section 14, Constitution, State of Nebraska, which provides in part: "And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed."

"Even though an act of the legislature professes to be an independent act, and does not formally purport to amend any prior act or acts, yet if, in fact, the legislative intent is to, and it clearly appears that the act does, make changes in an existing act or acts by adding new provisions or changing existing ones therein and mingling the new and the changed with the old on the same subject, so as to make of the old, the changed, and the new a connected piece of legislation covering the same subject, the later act must be considered an amendment of the former act or acts and within the constitutional prohibition." State ex rel. Beal v. Bauman, 126 Neb. 566, 254 N. W. 256. See, also, Tukey v. Douglas County, 129 Neb. 353, 261 N. W. 833; Chicago, B. & Q. R.R. Co. v. County of Box Butte, 166 Neb. 603, 90 N. W. 2d 72.

"The constitutional provision is applicable to an act which is not complete in itself, but relates to other existing statutes by changing them in part so that the changes and the existing provisions result in a connected piece of legislation covering the same subject matter." State v. Greenburg, 187 Neb. 149, 187 N. W. 2d 751.

Prior to the passage of Laws 1969, chapter 407, section 3, page 1407, section 48-810, R. R. S. 1943, did not apply to governmental functions of political subdivisions but

was limited to governmental service in a proprietary capacity. In making the section applicable to all forms of governmental service, the 1969 act necessarily limited and circumscribed the authority previously accorded to governmental units to determine and fix the wages and working conditions of employees. This is the principal subject of the act. It authorized the Court of Industrial Relations to step in and dictate settlements when disagreements arose. It is apparent that the 1969 act was not an independent act but related to other existing statutes granting sole authority to governmental units to finally determine and fix wages and terms of employment. It was the evident design that the changes in the 1969 act and the existing provisions result in a connected piece of legislation covering the same subject matter. It clearly appears that the 1969 act does make changes in existing statutes by limiting authority previously accorded governmental units, making their decisions subject to review and nullification, and permitting the Court of Industrial Relations to make these decisions for them. It represents an attempt to make of the old, the changed, and the new a connected piece of legislation covering the same subject and must be considered an amendment of the former acts and within the constitutional prohibition.

BOSLAUGH, J., dissenting in part.

I agree generally with the opinion of the majority of the court in this case. However, I believe section 48-837, R. S. Supp., 1972, enacted in 1969, established the right of the members of the plaintiff to be represented by it in collective negotiation with the defendant. I would affirm the order of the Court of Industrial Relations which directed the parties to undertake good faith negotiations.