### No. 27368

**The People of the State of Colorado v. Brian Wayne Harper**

(562 P.2d 1112)

Decided April 18, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Deborah L. Bianco, Assistant, for plaintiff-appellee.

Davies and Saint-Veltri, Joseph Saint-Veltri, Jonathan L. Olom, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This appeal was taken after the defendant was convicted of violating C.R.S. 1963, 48-5-20, sale of a narcotic drug.[1] It is undisputed that a sale occurred. The issues are (1) whether the substance sold was the alleged narcotic drug — "cocaine" — within the meaning of the statute, and (2) whether the statute is defective because of an unconstitutional delegation of legislative power.

A prosecution expert testified that the substance which he tested contained a certain percentage of cocaine. On cross-examination, the expert testified that "pseudococaine" — a chemically distinct stereoisomer of natural cocaine — would test exactly the same as natural cocaine. He also admitted that he was not able to provide an opinion as to whether the substance which he tested was derived from the coca leaf, and that the test which he performed did not indicate whether the substance was a natural

---

[1] Now section 12-22-322, C.R.S. 1973.

extract of the coca leaf or synthetically produced. On the basis of the admissions made in the course of cross-examination, defense counsel objected to the admission of the narcotic exhibits, asserting that a proper foundation was not laid. The court overruled the objection, and at the conclusion of all of the evidence found the defendant guilty as charged. We affirm.

## I.
### Identity of the Drug

Section 12-22-301(16), C.R.S. 1973, defines "narcotic drugs" as, *inter alia*, "any other drug to which the *federal* 'Controlled Substances Act of 1970' may apply . . . ."[2] The Federal Controlled Substances Act, 21 U.S.C. 802 (16) (1970), became effective on October 27, 1970. It provides:

"The term 'narcotic drug' means any of the following, whether produced directly by extraction from substances of vegetable origin, *or independently by means of chemical synthesis*, or by a combination of extraction and chemical synthesis:

"(A) Opium, coca leaves, and opiates." (Emphasis added.)

Although evidence of the identity of the substance which provided the foundation for the defendant's conviction was ambivalent as to whether the cocaine was "natural" or "synthetically produced," we find no error. The United States Court of Appeals for the Tenth Circuit recently held that even if a substance in issue was "pseudococaine," it, nonetheless, fell within the prohibition of the federal statute. *See United States v. Wilburn*, 549 F.2d 734 (10th Cir. No. 76-1065, announced February 15, 1977). We find that, as a matter of law, the statutory prohibition under the Colorado statute encompasses synthetically produced forms of cocaine, as well as natural cocaine.

## II.
### Constitutionality of the Statute

It is apparent from the chronology behind the adoption of the federal and Colorado statutes that synthetic cocaine was a prohibited substance under the Federal Act at the time the Colorado General Assembly enacted the narcotic statute which prohibits the sale of cocaine. It is conceded that a majority of the jurisdictions which have considered the matter recognize that a legislature may incorporate in a state statute federal statutory provisions by an appropriate reference. *See, e.g., State v. Welch*, 279 So.2d 11 (Fla. 1973); *People v. Downes*, 49 Mich.App. 532, 212 N.W.2d 314 (1973), *rev'd on other grounds*, 394 Mich. 17, 228 N.W.2d 212 (1975); *State v. Workman*, 186 Neb. 467, 183 N.W.2d 911

---

[2] Colo. Sess. Laws 1973, ch. 166, § 2 at 569 (emphasis added). The emphasized portion within the statutory prohibition was added by the General Assembly in 1973.

(1971); *State v. Julson*, 202 N.W.2d 145 (N.D. 1972); *State v. Grinstead*, 206 S.E.2d 912 (W.Va. 1974). *See generally*, 73 *Am.Jur.2d, Statutes* § 28 (1974). In *Apple v. City and County of Denver*, 154 Colo. 166, 390 P.2d 91 (1964), we held that "[i]ncorporating into a statute the provisions of other statutes by reference is recognized as a proper enactment of legislation to avoid encumbering the statute books by unnecessary repetition."

■ The defendant also attacks the Colorado statute as facially invalid on the ground that it incorporates *prospective* or *future* determinations of illegal substances under the Federal Controlled Substances Act. Several courts have held similar statutory features to be constitutionally defective. *See, e.g., People v. Downes, supra; State v. Workman, supra; State v. Julson, supra; State v. Johnson*, 84 S.D. 556, 173 N.W.2d 894 (1970); *State v. Urguhart*, 50 Wash.2d 131, 310 P.2d 261 (1957); *State v. Grinstead, supra.* In this case, however, we are not dealing with future or prospective changes, but only with the scope of the federal enactment at the time the General Assembly enacted the statute in issue. The defendant's conduct in this case was clearly proscribed by the statute at the time it was originally enacted. Moreover, we do not perceive any fundamental right which is conceivably chilled by the statute. Accordingly, we do not reach the question of the validity of the present statute under these claims "merely because more marginal cases could be imagined where doubts might arise in its application." *People v. McCauley*, 192 Colo. 545, 561 P.2d 335, *quoting People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975). *Cf. People v. Denn*, 192 Colo. 276, 557 P.2d 1200 (1976) (lack of standing to attack portion of narcotics statute not involved in conviction).

Accordingly, we affirm.