Wendell JACKSON, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 5317.

Supreme Court of Wyoming.

Jan. 22, 1981.

Philip P. Whynott, Cheyenne, on brief, for appellant; Mary Kennedy, Cheyenne, argued.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Allen C. Johnson, Senior Asst. Atty. Gen., Cheyenne (argued), on brief, for appellee.

Before ROSE, C. J.,* McCLINTOCK, RA-PER ** and THOMAS, JJ., and GUTH-RIE,*** J., retired.

GUTHRIE, Justice, Retired.

Appellant was convicted of four counts of delivery of a controlled substance. These charges involve the delivery of heroin on July 14 and 21 and of cocaine on July 21 and 22. All in 1978. These deliveries were made to an informant who shall hereafter only be referred to as X throughout this opinion.

Appellant seeks reversal of these convictions for the reasons which are set out as follows:

1. "It was error for the trial court to admit the alleged to [sic] pre-recording of the transactions into evidence."

---

* Chief Justice since January 5, 1981.

** Chief Justice at time of oral argument.

*** ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., retired, was assigned, having been retained in active judicial service pursuant to Art. 5, § 5, Wyoming Constitution, and § 5-1-106(f), W.S.1977, by order of this court entered on January 1, 1979.

2. "Appellant cannot be convicted of delivering cocaine unless the state has proved beyond a reasonable doubt that the substances tested by the state's chemist are a form of cocaine that is either a derivative of coca leaves or a substance chemically equivalent or identical to such a derivative."

3. "It was reversible error for the trial court to deny Appellant the use, at state expense, of a chemist and private investigator."

4. "It was error to prohibit Appellant from inquiring of ... [State's expert witness] as to his academic training."

5. "It was reversible error for the trial court to refuse to instruct the jury on Appellant's theory of the case."

We find no basis for reversal based upon these contentions.

■ Because of the posture of this case and the manner of its presentation, it appears proper to avoid needless repetition in our decision herein covering the points upon which the appellant seeks reversal to set out that error alone is not a basis for reversal but must affect substantial rights to be the basis therefor. Rule 49(a), W.R.Cr.P., and Rule 7.04, W.R.A.P. Additionally, it is the burden of appellant seeking reversal to demonstrate and establish the prejudice claimed. *Nimmo v. State*, Wyo., 603 P.2d 386, 393 (1979); *Cosco v. State*, Wyo., 503 P.2d 1403, 1406 (1972), *certiorari denied* 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973); *Kennedy v. State*, Wyo., 559 P.2d 1014, 1018 (1977).

■ Generally, discretionary rulings of a trial judge are not reversible error unless a clear abuse of discretion is shown. *Deeter v. State*, Wyo., 500 P.2d 68, 71 (1972). A trial court is granted a reasonable discretion concerning the admissibility of evidence and error cannot be based thereon, absent an abuse of discretion. *Reeder v. State*, Wyo., 515 P.2d 969, 973 (1973), *man-*

*damus denied* 419 U.S. 1018, 95 S.Ct. 509, 42 L.Ed.2d 303 (1974); *Daellenbach v. State*, Wyo., 562 P.2d 679, 682 (1977); *Peterson v. State*, Wyo., 586 P.2d 144, 154 (1978).

These last authorities are particularly applicable to the points numbered one and four.

### Admission of the Tapes

The tapes to which objection is made were those containing conversations between Jackson and X, obtained by the use of a microphone taped to X's body and also included some telephone conversations.

It is most difficult to determine just what is the basis of appellant's complaint in connection with the reception of the tapes because of the manner in which it is presented. In his attack on their admission, he first asserts that they should be suppressed because they were taken in violation of §§ 37–12–112 * and 37–12–125, W.S.1977. Additionally, he contends the recording of the telephone conversations violated the provisions of the Mountain States Telephone and Telegraph Company General Exchange Tariff, a copy of which does not appear to be in the record. Further, he claims that the transmissions of the body mike violated 47 U.S.C. 301 and 47 U.S.C. 153(b) and (c), because the parties did not possess a valid radio license. He, also, makes assertion that the tapes contained reference to possible criminal conduct which was not the subject of the matter before the court. He further asserts that the use of these tapes is a form of note-taking which violates the provisions of § 1–11–209, W.S.1977.

The position that these tapes were inadmissible because of the violation of the Wyoming statutes, the General Exchange Tariff of the telephone company, and the federal statutes, all before mentioned, is not buttressed by any cogent or applicable authority or argument.[1]

---

\* Apparently appellant intended to refer to § 37–12–122, W.S.1977.

1. In *Todisco v. United States*, 9 Cir., 298 F.2d 208, 211 (1961), the Court specifically refused to pass upon the question of whether there was a violation of 47 U.S.C. 301 and 47 U.S.C. 153(b & c) in making such tapes, but the Court specifically held that tapes so taken are admissible.

This court has many times repeated the necessity that an appellant support a claim of error by authority or cogent argument. *Chernichwan v. State*, Wyo., 594 P.2d 464, 470 (1979); *Otte v. State*, Wyo., 563 P.2d 1361, 1363 (1977); *Scherling v. Kilgore*, Wyo., 599 P.2d 1352, 1359 (1979).

The appellant's statement that "possible criminal conduct," is contained in the tapes and supported only by the assertion that this is error is totally insufficient. There is no attempt made to indicate the nature of the reference. We have no idea to what he is referring. This emphasizes the applicability of the rule of requiring cogent argument and applicable authorities. This is not presented in a manner which complies with the requirements of Rule 5.01, W.R.A.P., because it fails to include "a statement of the facts relevant to the issues presented by review, with appropriate page references to the record." We cannot consider this.

The contention as to the violation of § 1–11–209, W.S.1977, is not only unsupported by authority but is more unique than logical and is not worthy of further mention.

He further asserts that these tapes are largely unintelligible and the matters thereon could not be understood. He nowhere states the nature of the omitted material or alleges that it was favorable to him. Without seeming to be facetious and without appearing to take this lightly, this writer finds it hard to believe that a juror might be prejudiced by what he did not hear.

It was proper to admit the tapes unless they were so unintelligible as to render them untrustworthy. The decision rests within the discretion of the trial judge. *People v. Karrala*, 35 Mich.App. 541, 192 N.W.2d 676, 679 (1971); see also 57 A.L.R.3d 746, note entitled "Admissibility of Inaudible Sound Recordings."

The argument is made in appellant's brief to sustain his contention of error that the admission of these tapes was governed by Rule 403, W.R.E. With this we have no argument but are unable to see how appellant found solace therein because this rule vests a discretion in the trial court to *exclude* relevant evidence, "if its probative value is substantially outweighed by the danger of unfair prejudice." In *Key v. State*, Wyo., 616 P.2d 774, 775 (1980), this court recognized that Rule 403, *supra*, did not change the standard of review to be followed by this court and that rulings thereunder would not be reversed absent a clear showing of abuse of discretion. Appellant makes no such showing of abuse.

### Cross-examination of Expert Witness

The trial court refused to allow defendant's counsel to cross-examine the expert witness appearing for the State upon the grades which he received from the University of Wyoming where he was doing postgraduate work, the last of which grades were awarded to him some 12½ years before.

An expert is subject to a broad area of cross-examination to determine his expertise and questions which are fairly designed to test his expertise and to determine his qualifications and knowledge. *Chrysler Corporation v. Todorovich*, Wyo., 580 P.2d 1123, 1133 (1978). Even where this rule prevails, the area of cross-examination must remain within the discretion of the trial court. *State v. Vennard*, 159 Conn. 385, 270 A.2d 837, 844 (1970). The rule and reason therefor is set out in that case as follows:

"... One of the purposes of the cross-examination of an expert is to test his qualifications and credibility, and the trial court has broad discretion in determining whether a given question satisfies this purpose...." See also *United States v. Wainright*, 10 Cir., 413 F.2d 796, 801 (1969), *certiorari denied* 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501, *affirmed Wainright v. United States*, 10 Cir., 448 F.2d 984; and 2 Jones on Evidence, § 14:30, p. 668 (6th Ed.).

Conceding *arguendo* that such evidence was relevant, the trial judge might have based his ruling upon Rule 403, supra. This evidence was so remote, it could be

questionable and could tend to mislead and confuse a jury who might not well understand the grading system or its effect. This writer would personally question if the inquiry might be aimed at harassment of a witness rather than a search for qualifications.[2]

A trial court's discretion in limiting cross-examination "will not be disturbed unless clearly prejudicial." *Nimmo v. State*, supra, 603 P.2d at 393.

The writer must also observe that there is not a suggestion of any authority argued or cited that such an inquiry was proper or that to refuse it would be error. In absence of such citation of authority, we must assume appellant found no such authority. *Nation v. State ex rel. Fire Fighters Local 279*, I.A.F.F., Wyo., 518 P.2d 931, 933 (1974), with cited authorities. Appellant has in no manner sustained his burden of establishing error.

### Refusal to Appoint Investigator and Chemist at State's Expense

 In pursuit of his contention that it was reversible error for the court to deny the appellant the use at State expense of a chemist and private investigator, appellant claims that this refusal violated various provisions of the Constitutions of this State and of the United States including the due process and equal protection provisions. We cannot reach these contentions. It would be entirely improper to explore the constitutionality of the court's order because of the manner in which it is presented. Constitutional questions are too important to be answered unless fully and properly presented. *Salt Creek Transportation Co. v. Public Service Commission*, 37 Wyo. 488, 263 P. 621 (1928), cited with approval in *Johnson v. Schrader*, Wyo., 507 P.2d 814, 819 (1973). It is necessary that the constitutional questions be specifically phrased and completely argued before it would be proper for this court to pass upon them.

Doe v. Burk, Wyo., 513 P.2d 643, 645 (1973), and cases cited. Appellant has failed to do this, and we will not explore this area of asserted constitutional violations.

The statutes upon which appellant relies in raising this claim are:

"§ 7–1–108. Definitions.

"(a) As used in this act:

\* \* \* \* \* \*

"(iv) 'Needy person' means a person who at the time his need is determined is unable to provide for the full payment of an attorney and all other necessary expenses of representation;"

"§ 7–1–110. Right to attorney; cost; other rights.

"(a) A needy person who is being detained by a law enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled:

"(i) To be represented by an attorney to the same extent as a person having his own counsel is so entitled; and

"(ii) To be provided with the necessary services and facilities of representation (including investigation and other preparation)."

 By virtue of the statutes there are two factual questions posed to the trial court for its disposal, i. e., is the defendant an indigent person under the statutes, and are the services necessary? These questions must rest in the sound discretion of the trial judge. *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704, 713 (1977), *certiorari denied* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Collins v. State*, 14 Md.App. 674, 288 A.2d 221, 224 (1972); *State v. Campbell*, 210 Kan. 265, 500 P.2d 21, 29 (1972); *Brown v. District Court*, 189 Colo. 469, 541 P.2d 1248 (1975).

2. The trial judge, in exercising his discretion, may well have considered that only one of the failing grades involved as shown in the transcript and upon which the defendant's offer was based involved a chemistry course and the

remainder were in other areas. The court was justified in believing that such questions could not be fairly designed to test the witness' expertise.

A clear statement for the reasons that this be left to the court's discretion appears in *Magley v. State*, 263 Ind. 618, 335 N.E.2d 811, 816 (1975), where the court said:

"... A wealthy person may hire any number of people to aid in his defense, needlessly, or on a whim, or foolishly, and the State does not control his expenditures. But, when the court is allocating state funds for the defense of a defendant, it is rational for the court to use discretion in granting or denying the defendant's requests for additional personnel to aid him. Within the primary goal of the judicial process, which is due process of law for each defendant, the court may determine which expenses are probably needless, wasteful, or extravagant."

The record shows that the appellant in this case was represented by retained counsel both at the trial and upon this appeal. A further examination of the record does not reveal any of the evidence produced at the hearing on these motions. There is nothing in this record which would support any conclusions that the appellant was "a needy person" or that services were necessary and proper. Appellant did, in an apparent attempt to make this a part of the record, file an instrument entitled "Statement of Evidence When Transcript Is Unavailable." This was filed in reliance on Rule 4.03, W.R.A.P., but was stricken by this court because of the failure of appellant to comply with the conditions of this rule. Where, as here, the trial judge has not approved the statement of the record of evidence, this court cannot reach the issues. *Petersen v. State*, Wyo., 594 P.2d 978, 980 (1979). Absent evidence upon which this court could make any determination of this question it is apparent that appellant cannot predicate error upon this basis. There is nothing in the record upon which this court might make any disposition of this matter and it would be demonstrably improper and violative of basic and fundamental appellate rules to determine that the trial court had abused its discretion absent some evidence. This court said in *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980):

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did."

This demonstrates the necessity of evidence to dispose of any contention that there has been any such abuse.

In his disposal thereof, the trial court by his letter held that the appellant had failed to prove the necessity or reasonableness of the expenses for the employment of the chemist or investigator.

### Sufficiency of the Evidence

The appellant seeks to support his assertion of error that there was insufficient evidence to sustain these convictions because of the failure to prove that the material delivered was a controlled substance as defined by § 35-7-1016(a & b)(iv), W.S. 1977, which is as follows:

"(a) The controlled substances listed in this section are included in Schedule II. Schedule II shall consist of the drugs and other substances, by whatever official name, common or usual name, chemical name or brand name designated, listed in this section.

"(b) *Substances, vegetable origin or chemical synthesis.*—Unless specifically excepted or unless listed in another schedule, any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:

\* \* \* \* \* \*

"(iv) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine."

In the course of his brief, defendant-appellant contends that D-cocaine is not covered thereby and inasmuch as no test was made to determine if this were L-cocaine or D-cocaine, there is no proof that this is a controlled substance under the statute.

■ This position cannot rest in either the law or the evidence. The State's expert witness testified without equivocation that the material was cocaine. He made no test to determine if this were L-cocaine or D-cocaine. He also testified that L-cocaine occurs naturally and that D-cocaine is a synthetic composition which is the equivalent of L-cocaine.

We must view the evidence in a light most favorable to the prosecution and resolve the evidence in favor of the State. *Hovee v. State*, Wyo., 596 P.2d 1127, 1133 (1979). The evidence was clearly sufficient to sustain a conviction. *United States v. Wilburn*, 10 Cir., 549 F.2d 734 (1977); *People v. Harper*, 193 Colo. 116, 562 P.2d 1112 (1977). We are unable to understand appellant's reliance upon *United States v. Orzechowski*, 7 Cir., 547 F.2d 978 (1977), *certiorari denied* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977), which is the only authority he cited. It is our view that if *Orzechowski* was the sole authority available, we would be forced to rule against appellant based thereon.

## Refusal to Instruct

Appellant asserts that the district court was in error when it refused to give the following instruction:

"INSTRUCTION NO. 14

"It is the Defendant's theory of the case that he was framed by ... [X]. [X's] ... motive for this action was to buy his way out of two counts of assault

with a deadly weapon, a gun, which carries a total penalty of up to twenty eight [sic] years at hard labor in the Wyoming State Penitentiary. [X] ... was advised by Judge Maier of this penalty on December 16, 1977.

"That on April 19, 1978, trial was set for [X] ... on June 5, 1978. That on May 23, 1978, Judge Johnson continued Mr. [X's] ... trial because 'there are on-going negotiations between the County Attorney's office and the Defendant'.

"That in order to buy his way out of his criminal problems he framed a case against Wendell Jackson."

■ The trial court committed no error in refusing to give this instruction. It is well-established that the defendant does have a right to an instruction upon the theory of his case if there is competent evidence. *Blakely v. State*, Wyo., 474 P.2d 127, 129 (1970). Absent competent evidence to sustain such a theory, defendant is not entitled to such an instruction. *Goodman v. State*, Wyo., 573 P.2d 400, 410 (1977), and authorities cited therein. We find no competent evidence upon which such instruction could be based. The obvious purpose of this instruction was to destroy the credibility of witness X and not to present the theory of defendant's case.

The trial court did give a cautionary instruction [3] covering the credibility of a witness who testifies under a grant of immunity and which appears to have been offered by the defendant. It covers the testimony of a witness given under a grant of immunity. This instruction taken along with the general instruction to the jury, as to the effect of interest or motive, more than adequately advised the jury of the manner in which this testimony should be considered.

---

**3.** "Instruction No. 14b

"One who testifies under a grant of immunity with a promise from the government that he will not be prosecuted is a competent witness. His testimony may be received in evidence and considered by the jury even though not corroborated or supported by other evidence.

"Such testimony, however, should be examined by you with greater care than the testimony of an ordinary witness. You should consider whether the testimony may be colored in such a way as to further the witness's own interest, for a witness who realizes that he may procure his own freedom by incriminating another has motive [to] falsify. After such consideration, you may give the testimony of the immunized witness such weight as you feel it deserve [sic]".

The cross-examination of X revealed the fact that immunity had been granted by the State. Argument to the jury was also made along these lines. When such facts are clearly before the jury, this court has suggested that it is not error to refuse to give a cautionary instruction of the nature which was here given. *Channel v. State,* Wyo., 592 P.2d 1145, 1151–1152 (1979); and *Oldham v. State,* Wyo., 534 P.2d 107, 109–110 (1975).

The court does not discuss other possible objections to the propriety of the proffered instruction because it was not necessary for the disposal hereof.

From what has been said herein, the judgment must be affirmed.

Affirmed.

McCLINTOCK, Justice, dissenting, in which ROSE, Chief Justice, joins insofar as it addresses itself to the issue of the appointment of a private investigator and a chemist at the State's expense.

I dissent from the majority opinion because I cannot join in this court's conclusions that (1) the trial judge did not abuse his discretion when he limited the cross-examination of the State's expert witness and (2) because of the state of the record this court cannot reach the question of whether defendant was entitled to a court-appointed expert to conduct an independent test of the alleged controlled substances.

### Cross-examination of the State's expert witness

Defendant objects to the trial judge's refusal to allow his counsel to question the State's expert witness, either during voir dire or cross-examination, about the grades he received during graduate school. This court rejects this contention; however, it is unclear upon what basis this is done.

Under carefully controlled circumstances, X, a private citizen, made four buys from defendant of what was claimed to be heroin and cocaine, which were the subject of the charges. The State, in its case-in-chief, had an expert witness testify that he had tested each of these substances and that these substances were in fact controlled substances.

On direct examination, the State's expert testified he was a forensic chemist, who had been employed by the State of Wyoming, Division of State Laboratories, for the last 12½ years. The expert witness also described his educational background as follows:

"I have a bachelor of science degree in chemistry, and I completed one year of graduate school in chemistry."

The State's case turned upon the credibility of this expert's testimony as to whether the substances allegedly sold by appellant were in fact controlled substances, so this witness's testimony and his credibility with the jury were of the utmost importance.

In an offer of proof, appellant demonstrated that the State's expert witness had attended two years of graduate school; however, during these two years he received only 12 hours of credit because of the number of courses he failed. A review of the State expert's college transcript reveals the following courses taken and grades received during this two-year period:

| Fall 1965 | Grade |
|---|---|
| Chemistry 623F—Quantitative Analysis | F |
| Chemistry 630D—Organic Chemistry I | B |
| Chemistry 652F—Physical Chemistry | D |
| Semester Average: 2.00 | |
| Cumulative Average: 2.00 | |

| Spring 1966 | Grade |
|---|---|
| Chemistry 630D—Organic Chemistry II | – |
| Chemistry 754D—Advanced Physical Chemistry | C |
| Physics 605D—Mod. Physics for Engineers | B |
| Semester Average: 2.50 | |
| Cumulative Average: 2.25 | |

| Fall 1966 | Grade |
|---|---|
| Math 601D—Elementary Matrix Theory | F |
| Math 612F—Advanced Calculus | F |
| Math 631D—Fund. Concepts Math | F |
| Math 650D—Theory Probability | C |
| Semester Average: 0.50 | |
| Cumulative Average: 1.14 | |

| Spring 1967 | Grade |
|---|---|
| Math 601D—Elementary Matrix Theory | X |
| Math 612F—Advanced Calculus | F |
| Math 614D—Partial Diff. Eqs. | C |
| Semester Average: 1.00 | |
| Cumulative Average: 1.43 | |

After the offer of proof and the State's objection to questioning of the expert concerning the grades that he received, the trial judge sustained the State's objection. In so ruling the trial judge stated:

"... [T]he document itself with nothing more, may be misleading and has a greater tendency to mislead than it does to advise. Quite frankly, there is nothing in this document [the official University of Wyoming transcript] to show what these grades measure, what they represent or stand for.[1] He was graduated with a BS in chemistry, as indicated on the face of this exhibit. It may indicate a ranking in class, I don't know; it may indicate performance on a test, I don't know."

After being interrupted by appellant's counsel, the trial judge continued:

"These may, as you [counsel for the State] indicate, have a greater relevance at the time of graduation, but he has been employed by the University, who has granted him this degree, for twelve and a half years, and in the very same area that he has obtained his experience since that time. I think it has more of a tendency to embarrass, as you indicated, or to confuse than it would to illuminate what has happened."

After appellant was allowed to make his offer of proof, and an extensive colloquy between court and counsel took place, the trial judge once again stated that he did not know what the grades received by the expert meant and, therefore, they were not admissible.

The majority begin their inquiry by expounding the well-recognized rule that once an expert offers his opinions he opens himself up to a more rigorous cross-examina-tion than is normally allowed with an ordinary witness. *Chrysler Corporation v. Todorovich*, Wyo., 580 P.2d 1123, 1132–1133 (1978). However, they then go on to state:

"... Even where this rule prevails, the area of cross-examination must remain within the discretion of the trial court. *State v. Vennard*, 159 Conn. 385, 270 A.2d 837, 844 (1970)...." 624 P.2d at 754.)

This restriction is in direct conflict with our own holding in *Chrysler Corporation* where we stated in essence that a denial of cross-examination of an expert witness cannot be protected under the guise of judicial discretion. *Chrysler Corporation*, supra, 580 P.2d at 1133. I believe that this court should follow the dictates of *Chrysler Corporation*:

In *Chrysler Corporation*, supra, 580 P.2d at 1133, this court held that the trial judge committed prejudicial error when he refused to allow the defense to question plaintiff's expert witness on cross-examination about safety standards for automobile seating systems that were adopted pursuant to federal law. As this court stated:

"... It appears that the questioning was designed to test the knowledge, competency and qualifications of the expert witness ...

"At this point in the trial counsel for Chrysler was confronted with the problem of cross-examination of an expert witness for the plaintiff who had stated his opinion as to the proper method of designing and manufacturing the part that failed. This testimony related the expert's standard, and it was a critical aspect of the plaintiff's proof... Fairness to Chrysler in such a situation demands that it be afforded reasonable opportunity to test by searching questions

---

1. The back of the official University of Wyoming transcript provides the following information concerning student academic record (transcript):

| Grade | Description | Grade Points |
|---|---|---|
| A | Exceptional | 4 |
| B | Above Average | 3 |
| C | Average | 2 |
| D | Below Average | 1 |
| F | Failure | 0 |
| S | Satisfactory | 0 |
| U | Unsatisfactory | 0 |

| Grade | Description | Grade Points |
|---|---|---|
| W | Withdrawal | 0 |
| N | Termination | 0 |
| X | Delayed grade or incomplete | 0 |
| F | Technical Failure | 0 |
| W | Withdrawal Passing | 0 |
| F | Withdrawal Failing | 0 |
| Auditor | courses for audit indicated by 0 hours in the SEMESTER Hours column | 0 |

the knowledge, competency and qualifications of such an expert witness. In such an instance a ruling of a trial court refusing to permit cross-examination which is based upon an improper ground cannot be protected by the principle that the ruling was discretionary. The denial of an interrogation by Chrysler at this point in the trial constituted prejudicial error because it did not permit a fair opportunity to test the knowledge, competency and qualifications of the expert witness. Whatever the rule may be on cross-examining an expert witness as to the substance of his opinion testimony, the proper rule with respect to cross-examination designed to test his expertise is that it is in no way limited by his testimony on direct examination. *Having offered his expert opinion the expert witness exposes himself to interrogation which ordinarily would have no place in the cross-examination of a factual witness, but the expert exposes himself to the most searching kind of investigation into his qualifications, the extent of his knowledge and the reasons for his opinion, including the facts and other matters upon which it is based ... The cross-examiner can raise any subject fairly designed to test his expertise whether touched upon in his direct testimony or not. . . .*" (Emphasis added.)

When an expert testifies, he invites investigation into his qualification, the extent of his knowledge, and the reasons for his opinions. *Chrysler Corporation,* supra, 580 P.2d at 1132–1133. Such investigation cannot be limited by the trial judge because the facts revealed might embarrass the expert.

Here, appellant should have been allowed to test "the knowledge, competency and qualifications" of the State's forensic chemist. The State's witness was qualified as an expert by the trial judge; however, the question of credibility was for the jury. The denial of the right to question the expert's qualifications and knowledge was prejudicial error and "cannot be protected by the principle that the ruling was discretionary." *Chrysler Corporation,* supra, 580 P.2d at 1133. However, the majority have rejected the principles set forth in *Chrysler Corporation,* finding that the ruling here is protected by the principle that the trial judge has broad discretion in limiting cross-examination of an expert.

The majority have also concluded that the expert chemist's grades received in graduate school could have been properly excluded under Rule 403, W.R.E., because it "could tend to mislead and confuse a jury who might not well understand the grading system or its effect." I find this reasoning specious because it questions the very intelligence and integrity of a jury. How can the majority question a juror's ability to understand the meaning of failing grades received in academic classes, while presumably at the same time believing that a juror is sophisticated enough to judge the credibility of witnesses, to weigh conflicting testimony or to determine whether there is sufficient evidence to prove beyond a reasonable doubt that the defendant committed the crime charged? I do not believe that the evidence was properly excluded because it would have misled or confused the jury. Quite to the contrary, I believe that this evidence was essential to the jury's determination of the expert's qualifications.

Finally, while I agree with the majority that the case cited by defendant's counsel in support of this contention is not pertinent, I believe that a cogent argument was raised. This court has a duty, therefore, to address the contention. Furthermore, in the face of *Chrysler Corporation,* a case I believe to be directly in point, I cannot agree with the majority that we must assume no authority exists to support defendant's contention.

### Appointment of a private investigator and a chemist at the State's expense

The majority have also incorrectly concluded that they cannot reach the question of whether the trial court erred in refusing to allow defendant to hire a private investigator and a chemist with State funds because the record does not contain a transcript of the hearing on the motions or a

formal order. While it is true that the hearing on the motions was not transcribed, the record does contain the motions and a letter concerning the denial of these motions written by the trial judge and addressed to all counsel. I believe that the letter denying the motions in and of itself requires this court to address the question, and by failing to do so, this court has unjustly denied defendant his right to appeal from the trial court's decision denying his motions.

At his own expense, appellant retained a private attorney, but that attorney later applied for permission to retain an investigator and chemist at State expense, representing in the motion that these services were necessary and that his client was without funds to defray the expense. In his motion requesting funds for a chemist, counsel represented to the court:

"I

"THAT in the State's investigation of the companion case of Roberta Freeman, on similar and related charges, two State laboratories obtained absolutely contrary results in chemical testing of the supposed controlled substances.

"II

"THAT the Wyoming State Crime Laboratory, which had tested the above-mentioned supposed controlled substances with negative results later declined to perform testing of the supposed controlled substances involved in this case.

\* \* \* \* \* \*

"V

"THAT Defendant is unable to provide for the full payment of both an attorney and all other necessary expenses of representation, to-wit: the services of Robert Shapiro.

\* \* \* \* \* \*

"VII

"THAT the employment of Robert Shapiro is both necessary and proper in this case; that the refusal to grant Robert Shapiro will critically hurt the defense; and, that if Defendant had the financial resources he would employ Robert Shapiro to assist in his representation."

In a letter addressed to all counsel, the trial judge stated in pertinent part:

"Further, it would seem that the Court in exercising its discretion should find that the services to be provided are necessary in order to afford the defendant an adequate defense in his case, that the defendant is financially unable to obtain those services, that the Court determine reasonable value of such services and compensation therefor. *Here, there is no evidence that the proposed expert witness which the defendant desires to employ is able to controvert the findings and opinions of the State's witness; and on its face it would appear that the State's own witnesses are in conflict with regard to the presence or lack thereof of a controlled* substance. Also, so far as the chemist is concerned, it appears to the Court that the services requested are somewhat on the extravagant side, especially in view of the affidavit indicating that a substantial portion of these services will be involved in training counsel for the defendants. Training of counsel would seem to be an area of responsibility for retained counsel. Incidentally, little evidence has been submitted to the Court by way of designating other persons who might provide similar testimony at a more reasonable fee." (Emphasis added.)

From this letter it can be concluded the trial judge found that although the defendant was needy, the request was extravagant and, even though serious questions existed as to the validity of the State's case, there was no evidence presented showing that an independent expert would be able to controvert the findings of the State's expert. Defendant was therefore denied State funds to hire a chemist and an investigator. The question, which the majority have chosen not to consider, is then whether such funds were properly denied.

Section 7–1–108(a)(iv), W.S.1977, defines a "needy person" as one

"... who *at the time his need is determined* is unable to provide for the full payment of an attorney *and* all other *necessary* expenses of representation." (Emphasis added.)

Section 7–1–110, W.S.1977, provides in pertinent part:

"(a) A needy person who is being detained by a law enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled:

"(i) To be represented by an attorney to the same extent as a person having his own counsel is so entitled; and

"(ii) To be provided with the necessary services and facilities of representation (including investigation and other preparation).

\* \* \* \* \* \*

(d) *A needy person's right to a benefit under subsection (a) or (c) of this section is not affected by his having provided a similar benefit at his own expense, or by his having waived it, at an earlier stage.*" (Emphasis added.)

Our statute directs that a needy defendant be afforded legal and other *necessary* services. The purpose and intent of such a statute are disclosed by the Ninth Circuit Court of Appeals in *United States v. Hartfield*, 513 F.2d 254 (1975). In that case the court reversed defendant's conviction of attempted robbery of a savings and loan association while armed with a dangerous weapon, holding that the trial judge's denial of the indigent defendant's request for the administration of an electroencephalogram was reversible error. 18 U.S.C. § 3006A(e), like our own § 7–1–110, W.S.1977, provides that an indigent defendant after a proper request is made will be provided with necessary investigative and expert services if there is a finding that the services are necessary. The court said:

"Our determination of this issue is reinforced by a consideration of the Congressional purpose in enacting U.S.C. § 3006A(e) and the due process requirement of fair administration of justice, guaranteeing the crucial right of an indigent to reasonably fair equality with those who have adequate financial means to protect their rights. If the fairness of our system is to be assured, indigent defendants must have access to minimal defense aids to offset the advantage presented by the vast prosecutorial and investigative resources available to the Government. A contrary position might well result in a system wherein the outcome of criminal trials would be determined by the poverty of the accused rather than the integrity of the fact-finding process." 513 F.2d at 258.

As the Supreme Court of South Dakota stated in *State v. Sahlie*, 245 N.W.2d 476, 478–479 (1976):

"... Due process cannot be satisfied unless the defendant is provided some opportunity to examine possible exculpatory evidence long enough before trial so as to have at least an opportunity to determine if such evidence is or is not exculpatory."

To be effective, of course, examination of chemical substances must of necessity be made by an expert in the field. In *State v. Hanson*, S.D., 278 N.W.2d 198 (1979), the South Dakota court reversed and remanded for a new trial a conviction on five counts of distributing marijuana, because among other things the trial court refused to appoint an expert to conduct an independent test of the alleged controlled substance. In so holding, the court stated:

"We conclude that where doubt exists as to whether an independent test of an alleged contraband substance is material and exculpatory and the nature of the substance is critical to the State's case, the defense must be given an opportunity to have an independent determination made. This is particularly the case where the question of materiality turns on expert evaluations of the alleged contraband... A lay person is not equipped to refute an expert determination that a substance is, or is not, marijuana. Without an independent test by an expert, it would be very difficult for defendant or his attorney to effectively cross-examine

the State's expert, whether on the validity of the tests done, the methods of testing used or the correctness of the test results...

"... [I]t was also incumbent on the trial court to provide defendant with an independent expert to evaluate the substance in question, although the expert need not be of defendant's choosing." 278 N.W.2d at 200.

While our statute directs that a needy defendant be afforded legal services and other necessary services, it does not mandate that in every case defendant be provided with investigators and experts merely upon application. The statute requires that before ordering the expenditure of state money the trial judge must determine (1) that the defendant is *at the time of the application* unable to pay for those services, and (2) that the requested investigators and experts are necessary to insure that defendant will be able to present an adequate defense. There is no requirement that the defendant show that by use of the requested service he will be able to prove his innocence.

It has been said that "the supplying of expert pretrial services to indigent defendants in criminal cases at public expense is a matter within the sound discretion of the trial court." *Collins v. State*, 14 Md.App. 674, 288 A.2d 221, 224 (1972). In *Chrysler Corporation*, supra, 580 P.2d at 1133, we recognized the pertinence of this rule but held that error in refusing admission of certain pertinent cross-examination could not be approved on the "principle that the ruling was discretionary." I find no evidence in the record to support a finding that the trial judge abused his discretion in refusing to grant appellant's request for a private investigator. However, there is no question but that the issue of whether the substance delivered was a controlled substance was material and critical. Defendant could not be convicted unless the State proved beyond a reasonable doubt that the substances delivered were heroin and cocaine, within the definitions of the statute. If the identification of the substances was

questionable, information concerning that fact was most important to the defense and it could be supplied only by an expert witness.

Sufficient information to establish the necessity and pertinence of this crucial test was presented to the trial court. That there existed some real doubts as to the validity of the State's proposed evidence was recognized by the trial judge in his letter when he said that "on its face it would appear that the State's own witnesses are in conflict with regard to the presence or lack thereof of a controlled substance." This brings into play the test set forth in *United States v. Hartfield*, supra, 513 F.2d at 257:

"The test for deciding whether the district judge should have granted such a motion in these circumstances was set forth by our court in *United States v. Bass*, 477 F.2d 723 (9th Cir. 1973). There, the opinion reads:

" 'A clear standard for deciding what constitutes "necessity" under § 3006A(e) has not yet been stated in this circuit. We agree with the views of Judge Wisdom, concurring in *United States v. Theriault*, 400 F.2d 713, 716–717 (5th Cir. 1971). The statute *requires* the district judge to authorize defense services when the defense attorney makes a timely request in circumstances in which a *reasonable attorney would engage such services for a client having independent financial means to pay for them.*' (emphasis added).

477 F.2d at 725."

It is further stated in *United States v. Hartfield*, again quoting from Judge Wisdom's concurring opinion in *Theriault* (an opinion that that court had expressly approved in *Bass*):

" '*The trial judge should tend to rely on the judgment of the attorney, who has the primary duty of providing an adequate defense... [I]t comes close to putting the indigent defendant in the same position as a non-indigent defendant, where the defense attorney would*

*determine whether to engage the services.'*" (Emphasis added.) 513 F.2d at 258.

Admitting that the outcome of the test in the case at bar was problematical, it is still apparent that the attorney should leave no stone unturned to get a solution of the conflict in tests and the reluctance of the Wyoming Criminal Division Laboratory to be involved in presentation of the case. I *ask, would any attorney retained and paid by a client having the wherewithal to investigate all pertinent avenues of defense, and seeking to protect the best interests of his client, fail to secure the services of an independent and competent chemist to analyze the substance charged by the state to be heroin and cocaine? The answer is found in United States v. Hartfield,* 513 F.2d at 258:

"... [O]nce the court-appointed physician had reported that an EEG would be 'helpful' in arriving at a proper diagnosis, Hartfield's attorney, had Hartfield possessed the necessary financial means, *might have been charged with legal incompetency had he failed to resort to the EEG and all other sophisticated diagnostic aids.*"

The State, however, contends that because appellant did not have State-appointed counsel he was not entitled to public funds to hire a private investigator and chemist. The attorney general argues that the statutes contemplate State-assisted services only in the context of the public defender system and that to permit an accused to retain his own private counsel and then seek to tap the public treasury would make a shambles of the system. Sections 7–1–108 and 7–1–110, supra, were enacted as part of the Public Defender Act, Ch. 170. S.L. of Wyoming 1977, the whole purpose of that act being to provide a proper defense for all needy persons, not merely those who must in the first instance elect to proceed with the aid of the public defender. It was not intended to bar from assistance those who may have consumed what resources they had in an uncompleted defense of the charge. The request is to be appraised *at the time of need,* not by what has gone on

before. It is not difficult to envision situations where an accused may have had sufficient funds to retain an attorney and commence his defense, then found his funds exhausted before the defense was fully developed. This may result from loss of income due to inability to find work during the progress of the case; it may result from exhaustion of savings or other reasons, but it is the present lack of funds that determines his right to *necessary* assistance at State expense. This is made clear by the provisions of subparagraph (d) of § 110 where it is specifically said that the defendant's right to a benefit under the section "is not affected by his having provided a similar benefit at his own expense, or by his having waived it, at an earlier stage." The extent of his need for help is not lessened because he may have been able to pay his way to that point. Also, the question is whether he is able to provide for the full payment of an attorney *and* all other necessary expenses. Perhaps he can pay one and not the other, and that would be to the advantage of the State.

It is also apparent from the trial judge's letter denying the motion that he was concerned that the particular request, representing a proposed expenditure of $2,500 was somewhat extravagant, "especially in view of the affidavit indicating that a substantial portion of these services will be involved in training counsel for the defendants." However, as said in *State v. Hanson,* supra, 278 N.W.2d at 200, the expert appointed "need not be of defendant's choosing." Nor do I think that the trial court was required to have counsel trained at State expense. It is not unusual for a trial court to give a litigant less than he requests, but reduction is not the same as denial. In this case the trial judge's decision was not primarily influenced by the amount of the request; he was led to the denial because of his determination that there was "no evidence that the proposed expert witness which the defendant desires to employ is able to controvert the findings and opinions of the State's witness." To impose such a standard ignores the purpose and intent of the statute which is that a

needy person have available to him the same services as " 'a reasonable attorney would engage . . . for a client having independent financial means to pay them.' " *United States v. Hartfield*, supra, 513 F.2d at 257.

Because the record reflects that there is at least a reasonable basis to believe that an independent test might be exculpatory, and because conviction turns upon the nature of the substance, I would have held that defendant must be given an opportunity to have the substance tested by a private chemist. Fundamental fairness requires that the State provide defendant with an independent chemist. It does not require that the court blindly accept the recommendation of counsel, but some knowledgeable and competent person should have been designated to conduct a proper test.

For these reasons, I would have reversed the cause and remanded for further proceedings.