2012 COA 55

**In re the complaint filed by the CITY OF COLORADO SPRINGS, Colorado, Appellant,**

**and**

**Concerning Colorado Ethics Watch, Appellee.**

**No. 11CA0892.**

Colorado Court of Appeals, Div. VII.

March 29, 2012.

Patricia K. Kelly, City Attorney, W. Erik Lamphere, Attorney, Colorado Springs, Colorado, for Appellant.

Luis Toro, Denver, Colorado, for Appellee.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, for Amicus Curiae Secretary of State.

Opinion by Judge MILLER.

¶ 1 In this dispute regarding alleged violations of campaign finance disclosure requirements in municipal elections, the City of Colorado Springs (City), appeals the order of the administrative law judge (ALJ) dismissing a complaint for lack of subject matter jurisdiction. The genesis of the complaint was a letter sent to the City's Mayor alleging violations of the City's campaign practices ordinance. The City forwarded the letter to the Secretary of State's office, which referred it to the ALJ.

¶ 2 This case presents the unusual situation of a home rule municipality seeking to delegate its home rule authority to the state.

Section 1–45–116, C.R.S.2011, of the Fair Campaign Practices Act (FCPA) provides that the campaign practices requirements of article XXVIII of the Colorado Constitution and of the FCPA do not apply to home rule municipalities, such as the City, that have adopted their own campaign practices ordinances. Accordingly, we agree with the ALJ that he lacked jurisdiction to address the campaign disclosure violations alleged in the complaint. We therefore affirm.

## I. Background

¶ 3 Colorado Ethics Watch (CEW) sent a letter to the City's Mayor and Vice Mayor alleging that a slate of City Council candidates had violated campaign finance disclosure requirements set forth in part 2 of the elections chapter (the campaign practices ordinance) of the City's Municipal Code (City Code). City Code §§ 5.2.201–5.2.204. CEW requested that the City Attorney investigate allegations that the candidates failed to register individual candidate committees and to file campaign finance disclosure reports. CEW also invoked a provision of the City Code providing for specific sanctions in the case of a knowing violation of the campaign finance ordinance.

¶ 4 The Mayor forwarded the complaint to the Secretary of State's office, requesting that it investigate the complaint. The Mayor acknowledged that the complaint had been sent to the City but "determined that a better venue would be [the Secretary of State's] office." The Secretary of State then forwarded the complaint to the Office of Administrative Courts for assignment to an ALJ, noting that the City intended to be the complainant in the case.

¶ 5 The ALJ issued a well-reasoned written order sua sponte addressing subject matter jurisdiction. After observing that the City is a home rule municipality that may legislate as to matters of local concern, the ALJ concluded that the City's campaign practices ordinance regulates campaign registration and disclosure practices and provides a process for local investigation and prosecution of alleged violations, and that these provisions superseded state law provisions providing for a different hearing process. Accordingly, because the superseded law was the source of the ALJ's authority, the ALJ dismissed the complaint for lack of subject matter jurisdiction.

## II. Analysis

¶ 6 The City argues on appeal that its campaign practices ordinance addresses only knowing violations, that the City may refer allegations of non-knowing violations to the state for investigation and sanctions under the FCPA, and that, therefore, the ALJ has jurisdiction over the complaint. We are not persuaded.

### A. Standard of Review

¶ 7 We review questions of statutory construction de novo. *Specialty Rests. Corp. v. Nelson,* 231 P.3d 393, 397 (Colo. 2010). In interpreting a statute, our primary objective is to ascertain and effectuate the intent of the General Assembly. *Id.* "If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning." *Id.*

### B. Scope of Home Rule Authority

¶ 8 The parties and the Secretary of State, appearing as amicus curiae, agree that the City is a home rule municipality organized pursuant to article XX of the Colorado Constitution. *See also City of Commerce City v. State,* 40 P.3d 1273, 1279 (Colo.2002). Section 6 of article XX, adopted by popular vote in 1912, granted home rule powers to municipalities operating under its provisions. *Fraternal Order of Police, Colo. Lodge No. 27 v. City & Cnty. of Denver,* 926 P.2d 582, 586 (Colo.1996). Section 6 was designed to confer on home rule municipalities the General Assembly's power and to limit the General Assembly's authority with respect to local affairs in home rule municipalities. *Id.* at 587.

¶ 9 Regarding municipal elections, section 6(d) provides in pertinent part that home rule municipalities shall have the "power to legislate upon, provide, regulate, conduct and control ... [a]ll matters pertaining to municipal elections in such city or town ... including ... securing the purity of elections."

This portion of section 6 has been construed as conferring on "municipalities all the powers of the General Assembly with regard to local and municipal electoral matters." *Bruce v. City of Colo. Springs,* 252 P.3d 30, 33 (Colo.App.2010).

## C. State and Local Campaign Finance Provisions

¶ 10 Article XXVIII and the FCPA regulate campaign finance. Section 7 of article XXVIII governs disclosure requirements and adopts by reference the requirements of the FCPA codified at section 1–45–108, C.R.S.2011. Both article XXVIII and the FCPA provide various penalties for violation of their requirements. Colo. Const. art. XXVIII, § 10; § 1–45–111.5(1.5)(c), C.R.S. 2011. The Secretary of State receives complaints alleging violations of article XXVIII or of the FCPA and must refer them to an ALJ. Colo. Const. art. XXVIII, § 9(2)(a).

¶ 11 However, as relevant here, the FCPA also provides in pertinent part that "[t]he requirements of article XXVIII of the state constitution and of this article shall not apply to ... home rule municipalities that have adopted charters, ordinances, or resolutions that address the matters covered by article XXVIII and [the FCPA]." § 1–45–116.

¶ 12 The City falls within this exclusion because its Charter and campaign practices ordinance address those matters. The City Charter requires the City Council to enact ordinances for disclosure of election campaign expenditures and contributions. Colo. Springs City Charter art. XI, § 11–50. The campaign practices ordinance addresses disclosure requirements for campaign expenditures and contributions, and it adopts by reference the provisions of the FCPA as amended. City Code § 5.2.201.

¶ 13 Among other provisions, the campaign practices ordinance prescribes a method for filing the reports required by the incorporated FCPA provisions and states that knowing violation of these reporting requirements is punishable as a misdemeanor and a fine in the amount of $500 for each offense. City Code §§ 5.2.202, 5.2.204(A). Additionally, a candidate who violates the reporting requirements forfeits the right to serve in the office to which he or she may have been elected. City Code § 5.2.204(A). The campaign practices ordinance further provides that, in addition to these sanctions, the sanctions provided in the FCPA, as incorporated, shall apply. City Code § 5.2.204(B).

¶ 14 The City Code also provides for enforcement of the campaign practices ordinance. Any person may file an affidavit with the City Attorney alleging a violation of the campaign practices ordinance. City Code § 5.1.111(A). The City Attorney then investigates and prosecutes the violation in the municipal court in the same manner as other municipal ordinance violations. *Id.*

## D. Application

¶ 15 We conclude for several reasons that the ALJ lacks jurisdiction over campaign practices arising out of the City's elections.

¶ 16 First, as previously noted, section 1–45–116 expressly provides that neither article XXVIII nor the FCPA applies to home rule municipalities that have adopted laws addressing the matters covered by those state law provisions. Therefore, the attempted referral of CEW's complaint to the Secretary of State conflicts with the clear intent of the General Assembly to exclude home rule municipality elections from state disclosure requirements when the home rule municipality has adopted its own ordinance regulating campaign practices.

¶ 17 Second, the Secretary of State, charged with promulgating rules to administer and enforce article XXVIII, Colo. Const. art. XXVIII, § 9(1)(b), has adopted a rule recognizing the exclusion from state disclosure requirements for home rule municipalities that have legislated on the same subject matter. Campaign & Political Finance Rule 7.1, 8 Code Colo. Regs. 1505–6:7.1 (article XXVIII and the FCPA do not apply to "home rule municipalities that have adopted charters, ordinances, or resolutions that address *any* of the matters covered by Article XXVIII or [the FCPA]") (emphasis added). Although we are not bound by an agency's construction of constitutional provisions and statutes relevant to its activities, we may

consider and defer to the agency's interpretations and the regulations it has promulgated. *See Bd. of Cnty. Comm'rs v. Colo. Pub. Utils. Comm'n,* 157 P.3d 1083, 1088–89 (Colo. 2007); *accord Colo. Citizens for Ethics in Gov't v. Comm. for Am. Dream,* 187 P.3d 1207, 1214 (Colo.App.2008).

¶ 18 Third, the Attorney General has similarly concluded that article XXVIII does not apply to home rule municipalities that have enacted provisions addressing the same subject matter. Op. Atty. Gen. No. 03–1 (Jan. 13, 2003). The Attorney General reasoned that article XXVIII does not (1) state that it governs home rule municipalities, (2) declare inapplicable any conflicting home rule municipality's ordinance, or (3) repeal section 1–45–116, despite repealing five other provisions of the FCPA. *Id.* at 8–9. He also concluded that articles XX and XXVIII can be harmonized by construing the local election provisions in article XXVIII as applying only to cities that do not exercise home rule authority. *Id.* at 9.

¶ 19 Formal opinions issued by the Attorney General have "some significance in cases involving consideration of constitutional provisions where there is room for interpretation." *Colo. Ass'n of Pub. Emps. v. Lamm,* 677 P.2d 1350, 1360 (Colo.1984) (quoting *White v. Anderson,* 155 Colo. 291, 299, 394 P.2d 333, 336 (1964); *see also Colo. Common Cause v. Meyer,* 758 P.2d 153, 159 (Colo. 1988) (because the Attorney General issues written opinions pursuant to a statutory duty, "the opinion is obviously entitled to respectful consideration as a contemporaneous interpretation of the law by a governmental official charged with the responsibility of such interpretation"). Here, we find the Attorney General's reasoning persuasive.

¶ 20 Finally, the Colorado Supreme Court and divisions of this court have previously held that municipal elections are a matter of local concern. *See People ex rel. Tate v. Prevost,* 55 Colo. 199, 214–15, 134 P. 129, 134 (1913) (observing that, in *Mauff v. People,* 52 Colo. 562, 123 P. 101 (1912), the Colorado Supreme Court held that municipal elections were matters of state concern and, thereafter, the people adopted section 6 of article XX and "declared ... that municipal elec-

tions were local and municipal matters upon which the people of municipalities had the power to legislate"); *see also Bruce,* 252 P.3d at 33–34 (the manner in which initiated ordinances are submitted for voter approval at a municipal election is a matter of local concern); *May v. Town of Mountain Village,* 969 P.2d 790, 794 (Colo.App.1998) (voter qualifications in municipal elections are a matter of local concern). This conclusion disposes of the City's unsupported argument that municipal elections are a matter of mixed state and local concern and, accordingly, that the state FCPA and the campaign practices ordinance may coexist.

¶ 21 Thus, article XXVIII, the FCPA (except as its provisions have been incorporated by the City into its own ordinance), and their enforcement scheme simply do not apply to the City's elections.

¶ 22 The City cites no authority, and we are aware of none, for its view that it may force a state agency to enforce the City's own ordinance adopted pursuant to its home rule authority. By adopting the FCPA by reference, the City effectively incorporated the provisions of the FCPA into its campaign practices ordinance. *See* 5 McQuillin, *The Law of Municipal Corporations* § 16.12 (3d rev. ed. 2011) (an ordinance may adopt by reference the provisions of existing statutes); *cf. People v. Harper,* 193 Colo. 116, 118, 562 P.2d 1112, 1113 (1977) (a legislature may incorporate federal statutory provisions into a state statute by appropriate reference) (citing *Apple v. City & Cnty. of Denver,* 154 Colo. 166, 174, 390 P.2d 91, 95 (1964)). An adopting government enforces its own law adopted by reference the same as any of its other laws. *See, e.g., Frayer v. People,* 684 P.2d 927, 930 (Colo.1984) (state prosecuted the defendant, even though the crime was defined by reference to federal law classifying a substance as a narcotic drug); *Harper,* 193 Colo. at 118–19, 562 P.2d at 1113 (same); *Weithorn v. Adelstein,* 201 So.2d 643, 644 (Fla.Dist.Ct.App.1967) (where municipality adopted by reference state election code, lawsuit alleging violations in a municipal election was required to be brought in municipal, rather than state, court). Thus, the City, and not the state, is responsible for investi-

gating and prosecuting alleged violations of the City's campaign practices ordinance, including the provisions of the FCPA that the City adopted by reference.

¶ 23 Finally, we reject the City's assertion that the campaign practices ordinance applies only to knowing violations and that CEW's complaint did not allege a knowing violation. By adopting the FCPA, including its regulations and sanctions, the campaign practices ordinance necessarily covers non-knowing violations. The City concedes that such violations are covered by the FCPA's provisions, which the City incorporated into its own ordinance. In any event, the last paragraph of the CEW complaint asks the City to "act quickly" because if the alleged violations were committed "knowingly," the forfeiture sanctions under section 5.2.204(A) would apply, affecting the eligibility for election of one of the candidates.[1] Therefore, CEW's complaint did not limit the scope of its request for investigation to non-knowing violations.

### III. Conclusion

¶ 24 Because the City, as a home rule municipality, enacted its campaign practices ordinance, neither article XXVIII nor the state version of the FCPA applies to the municipal election campaign reporting violations alleged by CEW. The ALJ therefore properly dismissed the complaint for lack of subject matter jurisdiction.

¶ 25 The order is affirmed.

Judge ROMÁN and Judge RICHMAN concur.

---

1. Regardless of the availability of forfeiture as a sanction, depending on the candidates' success in the election, the case is not moot because of the possibility of fines and other sanctions that may be available under section 5.2.204.